815 F.2d 125
 Edward BUNDY, Jr., Plaintiff, Appellant,
v.
Richard A. WILSON, Superintendant, Cheshire County House of
Correction, Defendant, Appellee.
Bryan COLPITT, Plaintiff, Appellant,
v.
Michael CUNNINGHAM, Warden, New Hampshire State Prison,
Defendant, Appellee.
 Nos. 86-1703, 86-1831.
 United States Court of Appeals,
First Circuit.
 Argued Jan. 7, 1987.
Decided March 20, 1987.
 
 James E. Duggan with whom Joanne Green, Appellate Defender Program, Concord, N.H., was on brief for plaintiffs, appellants.
 John S. Davis with whom Stephen E. Merrill, Atty. Gen., and Robert B. Muh, Asst. Atty. Gen., Criminal Justice Bureau, Concord, N.H., were on brief for defendants, appellees.
 Before BOWNES, Circuit Judge, ALDRICH, Senior Circuit Judge and GIGNOUX,* Senior District Judge.
 BOWNES, Circuit Judge.
 
 
 1
 In these consolidated cases, convicted felony defendants, Edward Bundy, Jr., and Bryan Colpitt, challenge the constitutionality of New Hampshire's appellate process for criminal defendants. Appellants contend that their due process rights were violated because the New Hampshire Supreme Court disposed of their appeals without granting them access to an adequate trial record and a meaningful opportunity to persuade the court that their appeals should be accepted.
 
 I.
 
 2
 Appellant Bryan Colpitt was convicted of robbery following a two-day jury trial in Strafford County Superior Court. He was sentenced to serve two and one-half to five years in the state prison. Colpitt filed a timely notice of appeal in the New Hampshire Supreme Court. Colpitt's notice of appeal raised six issues, including the trial court's refusal to conduct a mid-trial hearing on his competency and its failure to strike three misstatements of the evidence allegedly made by the prosecution during closing argument.
 
 
 3
 Appellant Edward Bundy was convicted of automobile theft by a jury in Cheshire County Superior Court. He was sentenced to twelve months in jail, with all but thirty days suspended. Bundy filed a notice of appeal challenging the sufficiency of the evidence and the alleged encroachment of the trial judge into the province of the jury by virtue of his answering "No" to its mid-deliberation question: "Does the law read that a person has to be driving a car to be charged with theft?"
 
 
 4
 The notices of appeal filed by Bundy and Colpitt were reviewed by the New Hampshire Supreme Court. The court disposed of their petitions for review in accordance with New Hampshire Supreme Court Rule 7(1), which provides: "The supreme court may, in its discretion, decline to accept an appeal from a lower court after a decision on the merits, or may summarily dispose of such an appeal as provided in rule 25." The court chose to dispose of appellants' petitions for review by issuing a "declination of acceptance order." Such an order issues when the New Hampshire Supreme Court "does not deem it desirable to review the issues in a case...." N.H.Sup.Ct.R. 3. A declination of acceptance order disposes of a defendant's appeal without any implication regarding the court's views on the merits of the claim; it simply permits the decision of the lower court to stand undisturbed. The New Hampshire Supreme Court issues its declination of acceptance order on the basis of the notice of appeal. A transcript normally does not accompany the notice of appeal. See N.H.Sup.Ct.R. 15; Douglas, Summary Disposition: The New Hampshire Supreme Court's Innovative and Unique Approach to Appellate Case Processing, 27 N.H.B.J. 211, 215-16 (1986).[1]
 
 
 5
 Both appellants sought reconsideration of the supreme court's declination of acceptance orders. Their motions were denied without explanation. They then sought habeas relief in the United States District Court for the District of New Hampshire under 28 U.S.C. Sec. 2254 (1982). Appellants advanced the same issues in their habeas petitions as they had raised in their notice of appeal to the New Hampshire Supreme Court, plus an additional claim challenging the constitutionality of the declination process.
 
 
 6
 The district court ordered the State of New Hampshire to produce a transcript of both proceedings. Both appellants, after reviewing the transcripts of their respective trials, conceded that some of the issues they had pressed to the supreme court and the district court were without merit. Colpitt, however, continued to urge that he was erroneously denied a competency hearing by the trial court. The district court, however, upheld the trial judge's refusal to hold a competency hearing, noting that this decision was "amply supported by record evidence." Bundy dropped his sufficiency of the evidence claim, but continued to assert that the trial court had impermissibly invaded the province of the jury by answering "No" to the question of whether a defendant must be driving a stolen car to be guilty of automobile theft. Bundy argued that the judge's answer constituted a resolution of the factual issue of whether Bundy exercised sufficient control over the car to be guilty of theft. The district court held that the jury's question did not reflect any uncertainty regarding a factual issue, but was merely a request for guidance "as to whether it was permissible to find [Bundy] guilty if he had not driven the automobile."
 
 
 7
 Neither Bundy nor Colpitt succeeded in persuading the district court that New Hampshire's criminal appellate process was unconstitutional, 638 F.Supp. 1277. Both appealed the district court's denial of habeas relief. The cases were consolidated by order of this court on September 12, 1986.
 
 II.
 
 8
 The fundamental issue is whether the New Hampshire Supreme Court's declination of appeals procedure comports with the strictures of due process. Appellants aver that, at a minimum, due process requires that criminal defendants whose liberty is at stake be afforded a trial transcript or sufficient substitute therefor and the right to submit a written argument to persuade the supreme court to hear their cases on the merits. Appellants contend that they cannot adequately present--nor can the supreme court fairly decide whether to accept--their appeals, without an opportunity to consult a transcript and marshal in writing the salient facts.
 
 
 9
 In its appellate brief to this court, the state has conceded the following:
 
 
 10
 (1) the New Hampshire Supreme Court misapplied its own rules in declining to review appellant Colpitt's conviction;
 
 
 11
 (2) due process principles apply to the court's system of discretionary appellate review;(3) in certain circumstances, due process requires, upon a sufficient showing of need, that an appellant be afforded an opportunity to review and present to the court relevant portions of the transcript of his trial prior to the court's decision whether to accept the appeal;
 
 
 12
 (4) appellant Colpitt, with respect to the issue of the competency hearing, made such a showing of need in his notice of appeal and his motion to reconsider declination of appeal; and
 
 
 13
 (5) the New Hampshire Supreme Court violated appellant Colpitt's rights to due process of law when it issued its declination order.
 
 
 14
 Brief for the State at ----.
 
 
 15
 The State thus concedes that the New Hampshire Supreme Court denied appellant Colpitt due process by failing to afford him access to a transcript in order to prepare and present his request for appellate review. Moreover, the State implies that there may be other circumstances in which due process would require providing criminal defendants with a transcript in order to have a meaningful opportunity to persuade the court to accept their appeals. But while the State concedes that there will be instances in which the normal operation of New Hampshire's declination of acceptance procedure will lead to due process violations, it does not share appellants' view that there is a systemic constitutional infirmity. Indeed, the State hints that the principal cause of Colpitt's due process violation was the New Hampshire Supreme Court's "misapplication of its own rules." This is a far cry from appellants' contention that constitutional defects inhere in the regular application of those rules.
 
 
 16
 In short, the State has conceded only that, as applied to appellant Colpitt, New Hampshire's declination of acceptance procedure violates due process. The State has made no such concession with respect to appellant Bundy. His challenge to the constitutionality of New Hampshire's system of appeals for criminal defendants is unaffected by the State's concession. Thus, notwithstanding the State's posture toward appellant Colpitt, our inquiry must still focus on whether the New Hampshire declination of acceptance procedure, as presently administered, violates due process.
 
 III.
 
 17
 Virtually every state in the country, as well as the District of Columbia and the Commonwealth of Puerto Rico, grants felony criminal defendants an automatic right to at least one full appeal on the merits.[2] Most states provide criminal defendants with automatic review in an intermediate court of appeals. The supreme court in these states generally has discretion to accept cases after they have been reviewed by the intermediate court of appeals. States which do not have two tiers of appellate review provide criminal defendants with an appeal as of right to the state supreme court. Virginia and West Virginia are the only other states besides New Hampshire which do not provide felony criminal defendants with an automatic right to an appeal on the merits. The procedural protections afforded a criminal appellant in those states, however, underline the solitariness of the New Hampshire system. In Virginia and West Virginia, a criminal appeal cannot be rejected until an appellate court has fully examined the relevant portions of the record and the defendant has been given a chance to persuade a court of review, both orally and in writing, to hear the case.
 
 
 18
 New Hampshire is the only state in the nation which does not guarantee to all felony criminal defendants, at a minimum, access to a transcript and an opportunity for argument before disposition of their appeals. The New Hampshire Supreme Court may dispose of a criminal appeal solely on the basis of the information in the notice of appeal. The notice of appeal requires the putative appellant to set forth:
 
 
 19
 (1) A "brief description" of the nature of the case and the result.
 
 
 20
 (2) The statute on which the case was based.
 
 
 21
 (3) The "specific questions to be raised on appeal, expressed in terms and circumstances of the case but without unnecessary detail."
 
 
 22
 (4) A list of cases supporting the movant's position.
 
 
 23
 There may also be attached to the notice of appeal copies of pertinent pleadings, motions, legal memoranda, statutory and constitutional texts, trial court rulings, and any other relevant documents. The notice of appeal does not ask for a statement of reasons or argument on the question of why an appeal should be accepted.
 
 
 24
 Once the notice of appeal has been filed, the New Hampshire Supreme Court utilizes a screening procedure to determine whether or not to hear the case on its merits. "The standard governing the making of a declination decision is one of sound judicial discretion with respect to the desirability of our hearing and deciding the case." State v. Cooper, 127 N.H. 119, 125, 498 A.2d 1209, 1214 (1985). A single justice is assigned to review the notice of appeal and recommend whether to accept the case, decline it, or summarily dispose of it pursuant to New Hampshire Supreme Court Rule 25.[3] Douglas The New Hampshire Supreme Court's Approach to Appellate Case Processing, 27 N.H.B.J. at 215. The other four justices on the supreme court subsequently review the recommendation of the screening justice. If the screening justice suggests that the appeal be declined, his recommendation will be upheld unless one of the other four justices disagrees.
 
 
 25
 The New Hampshire Supreme Court recently considered a challenge to the constitutionality of its own procedures for criminal appeals in State v. Cooper, 127 N.H. 119, 498 A.2d 1209. The appellants-defendants in Cooper claimed that the New Hampshire rules permitted the supreme court to decline appeals arbitrarily and capriciously simply by invoking a vague standard of "desirability." They also argued that the declination of acceptance procedure fostered an irrational distinction between meritorious and nonmeritorious appeals. Finally, the Cooper appellants asserted that the declination procedure inhibits counsel from effectively assisting criminal defendants who seek review in the New Hampshire Supreme Court.
 
 
 26
 The Cooper court stated that New Hampshire instituted a discretionary system of appellate review because the supreme court's case load had "mushroomed in recent years." 127 N.H. at 126, 498 A.2d at 1214. The court correctly recognized that the Constitution does not grant a criminal defendant the right to an appeal. 127 N.H. at 122, 498 A.2d at 1212. Accord Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); Abney v. United States, 431 U.S. 651, 656, 97 S.Ct. 2034, 2038, 52 L.Ed.2d 651 (1977); McKane v. Durston, 153 U.S. 684, 687-88, 14 S.Ct. 913, 914-15, 38 L.Ed. 867 (1894). It also properly noted that New Hampshire's criminal appeals system must comport with the strictures of due process. State v. Cooper, 127 N.H. at 122, 498 A.2d at 1212. There can be no question that a discretionary criminal appeals system is subject to the requirements of due process: "[W]hen a State opts to act in a field where its action has significant discretionary elements, it must nonetheless act in accord with the dictates of the Constitution--and, in particular, in accord with the Due Process Clause." Evitts v. Lucey, 469 U.S. 387, 401, 105 S.Ct. 830, 838, 83 L.Ed.2d 821 (1985).
 
 
 27
 After acknowledging that New Hampshire's discretionary system of criminal appeals was subject to federal due process standards, the state supreme court indicated that those standards were less rigorous when applied to New Hampshire because its system of criminal appeals is discretionary rather than automatic. State v. Cooper, 127 N.H. at 123, 498 A.2d at 1213. The state supreme court cited Evitts and Ross v. Moffit, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974), as support for this proposition. In Ross, the Supreme Court ruled that due process and equal protection did not require the State of North Carolina to provide an indigent defendant with counsel in a discretionary appeal to the state supreme court. Vital to the Court's reasoning was its recognition that North Carolina did provide counsel to criminal defendants who pursued their automatic right of appeal to the state's intermediate appellate court. Id. at 613-16, 94 S.Ct. at 2445-47. Thus, the crucial distinction advanced in Ross is not between discretionary appellate systems and automatic appellate systems. Rather, the key difference considered in both Evitts and Ross concerned the nature of constitutional protections in a single system which employed both a first appeal as of right to an intermediate court, and a subsequent discretionary appeal to the state supreme court. Evitts v. Lucey, 469 U.S. at 401-02, 105 S.Ct. at 835-36; Ross v. Moffit, 417 U.S. at 613-16, 94 S.Ct. at 2445-47. Indeed, the distinction between a first appeal of right and subsequent discretionary appeal within the same appellate system has been made by the Court in other cases. United States v. MacCollum, 426 U.S. 317, 324, 96 S.Ct. 2086, 2091, 48 L.Ed.2d 666 (1976); Douglas v. California, 372 U.S. 353, 356, 83 S.Ct. 814, 816, 9 L.Ed.2d 811 (1963). The Court, however, has not drawn a line between discretionary appellate systems and automatic appellate systems for the purpose of gauging the degree of due process protection owed a criminal appellant.
 
 
 28
 After asserting that discretionary appellate systems are subject to a less rigorous due process standard than automatic appellate systems, the Cooper court defended the constitutionality of the New Hampshire system by noting that its standards for acceptance of an appeal are similar to those utilized by the state supreme courts in Illinois and Tennessee. State v. Cooper, 127 N.H. at 126-27, 498 A.2d at 1215. The New Hampshire Supreme Court, however, failed to note that both of those states provide a criminal defendant with a first appeal as of right to an intermediate court of appeals. Thus, the court again drew a conclusion regarding single-tiered discretionary appellate systems based on jurisdictions with multi-tiered appellate systems which provided criminal defendants with at least one appeal as of right.
 
 
 29
 We must note our disagreement with the New Hampshire Supreme Court's conclusion that single-tiered discretionary appellate systems are subject to less rigorous due process strictures than multi-tiered appellate systems providing at least one appeal of right. The issue of whether the instant appellants are entitled to a transcript and an opportunity to persuade the state supreme court to accept their appeals does not turn on whether New Hampshire's appellate system is discretionary or automatic. The pertinent due process question is whether criminal appellants in New Hampshire are provided "an adequate opportunity to present their claims fairly within the adversary system." Ake v. Oklahoma, 470 U.S. 68, 77, 105 S.Ct. 1087, 1094, 84 L.Ed.2d 53 (1985) (quoting Ross v. Moffit, 417 U.S. at 612, 94 S.Ct. at 2444). We turn now to this question.
 
 IV.
 
 30
 The fourteenth amendment's due process guarantee of fundamental fairness requires states to provide a criminal defendant with "the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake." Ake v. Oklahoma, 470 U.S. at 76, 105 S.Ct. at 1093. The Supreme Court has stated that it is a criminal defendant's "access to the record which makes any appellate review meaningful...." Gardner v. California, 393 U.S. 367, 368, 89 S.Ct. 580, 581, 21 L.Ed.2d 601 (1969). Accordingly, "there can be no doubt that the State must provide an indigent defendant with a transcript when that transcript is needed for an effective defense or appeal." Britt v. North Carolina, 404 U.S. 226, 227, 92 S.Ct. 431, 433, 30 L.Ed.2d 400 (1971). Accord Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969); Gardner v. California, 393 U.S. 367, 89 S.Ct. 580, 21 L.Ed.2d 601 (1969); Roberts v. LaVallee, 389 U.S. 40, 88 S.Ct. 194, 19 L.Ed.2d 41 (1967); Long v. District Court of Iowa, 385 U.S. 192, 87 S.Ct. 362, 17 L.Ed.2d 290 (1966); Draper v. Washington, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed.2d 899 (1963); Eskridge v. Washington Prison Board, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed.2d 1269 (1958); Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). The Court also has emphasized that the holdings in the line of cases that began with Griffin, involving a criminal defendant's right of access to a transcript, are rooted firmly in both the due process and equal protection clauses of the fourteenth amendment. Evitts v. Lucey, 469 U.S. at 403-04, 105 S.Ct. at 839-40.
 
 
 31
 It is clear that the Court regards access to a transcript as an essential element for ensuring that a criminal appellant has "an adequate opportunity to present his claims fairly in the context of a State's appellate process." Id. at 402, 105 S.Ct. at 839. Decisions of circuit courts of appeals in this area affirm this assessment. See, e.g., Byrd v. Wainwright, 722 F.2d 716 (11th Cir.) (criminal defendant has a constitutional right to a transcript in order to petition the state supreme court for discretionary review of his conviction), cert. denied, 469 U.S. 869, 105 S.Ct. 217, 83 L.Ed.2d 147 (1984); Thompson v. Housewright, 741 F.2d 213 (8th Cir.1984); Oliver v. Zimmerman, 720 F.2d 766 (3d Cir.1983), cert. denied, 465 U.S. 1033, 104 S.Ct. 1302, 79 L.Ed.2d 701 (1984); United States ex rel. Burton v. Greer, 643 F.2d 466 (7th Cir.1981); United States ex rel. Buford v. Henderson, 524 F.2d 147 (2d Cir.1975), cert. denied, 424 U.S. 923, 96 S.Ct. 1133, 47 L.Ed.2d 332 (1976).
 
 
 32
 Having identified the constitutional significance which the Court attaches to a criminal appellant's access to a transcript, we turn now to an evaluation of whether New Hampshire's declination of appeals procedure violates due process.
 
 V.
 
 33
 The Supreme Court has identified three distinct factors that must be considered when evaluating a claim of due process deprivation. First, the private interest that is affected by the official action. Second, the risk of an erroneous deprivation caused by the procedures used, and the probable value, if any, of additional procedural safeguards. Third, the governmental interest at stake, including the function involved and the fiscal and administrative burden engendered by additional procedural requirements. Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).
 
 A.
 
 34
 The private interest at stake here is the appellants' "opportunity to participate meaningfully in a judicial proceeding in which [their] liberty is at stake." Ake v. Oklahoma, 470 U.S. at 76, 105 S.Ct. at 1093. The appellants seek to guard their interest in an accurate disposition of their appeals by obtaining procedural protections that will provide them with a full and fair opportunity to present their cases for review, and thus ensure the proper functioning of the adversary system. See Gardner v. California, 393 U.S. at 369, 89 S.Ct. at 582. The Supreme Court has recognized that such an interest is of paramount importance: "The private interest in the accuracy of a criminal proceeding that places an individual's life or liberty at risk is almost uniquely compelling." Ake v. Oklahoma, 470 U.S. at 78, 105 S.Ct. at 1094.
 
 
 35
 We note that the "uniquely compelling" interest at stake here carries even greater significance because appellants have only one chance, at the discretion of the New Hampshire Supreme Court, to obtain state appellate review of alleged errors that led to their incarceration.[4]
 
 B.
 
 36
 The risk of an erroneous deprivation of felony defendants' interests in fairly and meaningfully presenting their appeals is heightened immeasurably by the failure to afford them a transcript. A transcript is "the most basic and fundamental tool" of effective appellate advocacy. Hardy v. United States, 375 U.S. 277, 288, 84 S.Ct. 424, 431, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring). Our discussion in Section IV manifests the importance with which the Supreme Court regards access to a transcript. The Court has instructed that the due process mandate of fundamental fairness requires states to furnish criminal appellants with a trial transcript or an adequate substitute. E.g., Britt v. North Carolina, 404 U.S. at 227-30, 92 S.Ct. at 433-35; Draper v. Washington, 372 U.S. at 496, 83 S.Ct. at 779; Griffin v. Illinois, 351 U.S. at 20, 76 S.Ct. at 591; see also Evitts v. Lucey, 469 U.S. at 403-05, 105 S.Ct. at 840-41 (emphasizing the due process roots of Griffin and its progeny). An adequate substitute for a transcript is a document which would "place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise." Draper v. Washington, 372 U.S. at 495, 83 S.Ct. at 778.
 
 
 37
 The Court's solicitude regarding the furnishing of transcripts not only stems from the necessity of granting a criminal appellant a meaningful and fair opportunity to present his appeal; it also derives from a concern with ensuring that appellate courts have a full and accurate understanding of an appellant's contentions before dispensing with his appeal. Such concern pertains here regardless of the fact that the New Hampshire Supreme Court is not bound, either by the Constitution or its own rules, to actually decide the merits of an appeal. The New Hampshire Supreme Court has stated that the "right to appeal in New Hampshire is limited to the right to obtain a discretionary determination by this court as to whether it will accept the appeal." State v. Cooper, 127 N.H. at 124, 498 A.2d at 1213. This discretionary determination, however, cannot be made without regard for the constraints of due process. Evitts v. Lucey, 469 U.S. at 401, 105 S.Ct. at 838-39. To the extent that due process requires safeguards to assure the fair and accurate disposition of official proceedings, those safeguards must be heeded regardless of the fact that the proceedings are undertaken at the discretion of the government. Id.; see also Goldberg v. Kelly, 397 U.S. 254, 262, 90 S.Ct. 1011, 1017, 25 L.Ed.2d 287 (1970).
 
 
 38
 The facts of the instant appeals illustrate the dual justification for providing criminal appellants with transcripts. Appellant Colpitt alleged on appeal that he was entitled to a mid-trial competency hearing. The suasive force of Colpitt's claim was undercut by his inability to point to statements made on the record which cast doubt on his competency.[5] In addition, the New Hampshire Supreme Court could not fully and accurately assess Colpitt's need for a mid-trial competency hearing without examining the evidence which called into question his mental capacity.
 
 
 39
 Appellant Bundy's state court appeal alleged claims of insufficient evidence and improper invasion of the jury's province by the trial judge. Although Bundy later dropped his claim regarding sufficiency of the evidence, it is axiomatic that an appellant cannot meaningfully present such a claim without pointing to the specific areas where the prosecution failed to meet its evidentiary burden. As appellate court judges, we are mindful of the skepticism which is engendered by bald assertions of insufficient evidence unsupported by any citation to specific portions of the record. We realize, as already noted, that the New Hampshire Supreme Court is not bound to decide the merits of whether the evidence sufficed to convict Bundy. But the court cannot decide to decline criminal defendants a full review on the merits of their appeals "without first granting them a 'record of sufficient completeness' to permit proper consideration of their claims." Draper v. Washington, 372 U.S. at 499, 83 S.Ct. at 780;[6] see also Coppedge v. United States, 369 U.S. 438, 446, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962). Due process thus prohibits the New Hampshire Supreme Court from arbitrarily and capriciously deciding to decline to consider Bundy's sufficiency of the evidence claim. The state supreme court necessarily must make at least a rough assessment that the evidence is sufficient in order for its decision to accord with due process. We think it impossible for a reviewing court to make even a rough assessment of the sufficiency of the evidence without some reference to the trial court record. The accuracy of this rough assessment is especially important in New Hampshire for it will most likely determine the "desirability" of accepting the appeal.
 
 
 40
 Bundy's other state appellate claim, which he has continued to press, involved an alleged infringement into the province of the jury by the trial judge when he answered "No" to its question of whether "the law read[s] that a person has to be driving a car to be charged with theft?". Without an opportunity to make references to the record, Bundy's counsel was hard-pressed to support his assertion that the judge's answer resolved a factual question for the jury. Standing alone, the judge's answer appears to be nothing more than a correct statement of the law. The record reveals, however, that Bundy was only a passenger in the car when it was stolen and that the jury had requested another instruction regarding "exercising control." In short, the record shows that the jury was struggling to resolve the factual question of whether Bundy had exercised enough control over the car to be adjudged guilty of theft. Thus, a colorable claim could be advanced that the jury regarded the judge's answer to the question as obviating further exploration of the crucial factual element in the case. The plausibility of this argument could not, however, be advanced effectively without an opportunity to make appropriate citations to the record.
 
 
 41
 We also are of the opinion that appellants' interest in meaningfully and fairly presenting their claims was curtailed severely by New Hampshire's failure to allow felony criminal defendants an opportunity to persuade the court to accept their appeals. The New Hampshire notice of appeal form is, by its own terms, a summary document which requests only a "brief description of the case," and a recitation of the basis for the appeal "without unnecessary detail." Thus, not only are criminal appellants unable to marshal coherently the salient facts in their case because of the lack of a transcript, but, in addition, the language of the notice of appeal form discourages them from attempting to persuade the state supreme court to hear their appeals. Yet it is that very form which serves as the basis for the court's decision to accept or refuse the case.
 
 
 42
 We think that the failure to provide criminal appellants with a transcript, and the perfunctory outline of the basis for the appeal required by the notice of appeal, seriously threatens the interest of criminal defendants in obtaining meaningful review in New Hampshire's appellate system. The State's concession with respect to appellant Colpitt, and the situation of appellant Bundy, illustrate the real and continuing risk of an erroneous deprivation of a defendant's due process rights inherent in the current manner of administering New Hampshire's declination of acceptance procedure.
 
 C.
 
 43
 The third due process factor identified in Mathews focuses on the governmental interest at stake, as well as the fiscal and administrative burden of imposing additional procedures. The State interest implicated here is the speedy and efficient disposition of New Hampshire's appellate case load. New Hampshire contends that the supreme court's growing case load prohibits it from providing criminal defendants with a transcript and an opportunity to submit a brief written statement which attempts to persuade the court to accept their appeals. This claim is seriously undermined by the fact that every other state in the union which employs a single-tiered system of appeals can manage its case load while providing criminal defendants with more opportunity for appellate review than is sought by the appellants here.
 
 
 44
 New Hampshire's interest in the speedy and efficient disposition of its appellate case load "is necessarily tempered by its interest in the fair and accurate adjudication of criminal cases." Ake v. Oklahoma, 470 U.S. at 79, 105 S.Ct. at 1094-95. Thus, to a significant degree, the governmental interest implicated here overlaps the private interest which is at stake. Accordingly, New Hampshire's interest in denying a criminal appellant a transcript and a brief written argument "is not substantial, in light of the compelling interest of both the State and the individual in accurate dispositions." Id.
 
 
 45
 We may wonder whether the administrative efficiency component of the State interest at stake here actually may be helped, rather than hindered, by adopting the additional procedural safeguards sought. Providing felony defendants with a transcript and an express opportunity to persuade the court to accept the appeal would reduce the need to attach a lengthy appendix composed of pleadings, motions and other documents. Thus, the New Hampshire Supreme Court would have a concise document on hand to aid its determination of whether to accept or decline an appeal. Moreover, the availability of a transcript might help reduce the court's work load by enabling counsel to eliminate seemingly colorable claims whose actual meritlessness is revealed from an examination of the record. In the instant case, both Bundy and Colpitt dropped some of their claims after consulting the transcript made available to them by the federal district court. In any event, whatever the impact on administrative efficiency, it is of no great significance when compared to the importance of the interest advanced by appellants.
 
 D.
 
 46
 In sum, an examination of the Mathews factors indicates that we are faced with a "uniquely compelling" private interest; a relatively insubstantial state interest that might actually be advanced by adopting the additional procedures suggested here; and a serious risk of a deprivation of appellants' interest in a fair and meaningful opportunity to participate in New Hampshire's appellate process. Accordingly, we hold that the New Hampshire Supreme Court's declination of the state court appeals brought by the instant appellants violated their due process rights, because the decision was made without giving appellants a transcript or an opportunity to persuade the court to accept their appeals.
 
 VI.
 
 47
 As currently administered, the New Hampshire Supreme Court's declination of acceptance procedure violates the constitutional rights of felony defendants who assert appellate claims which have their basis in the record. The fundamental fairness guaranteed by the due process clause requires that such defendants be granted a transcript, or an adequate written substitute, and an opportunity to submit a brief written statement specifically focusing on why their appeals should be accepted.
 
 
 48
 Such requirements fall far below the procedural protections afforded criminal appellants in every other state in the country. Moreover, these requirements cannot be equated with granting criminal defendants an appeal as of right. The New Hampshire Supreme Court is still free to decline to accept cases. It cannot do so, however, until criminal appellants have been afforded the procedural protections delineated here.
 
 
 49
 Of course, not all criminal appellants will be entitled to a transcript. Those who assert appellate claims which do not arise out of any of the events at trial will not need recourse to the record to fairly and meaningfully present arguments why their appeals should be accepted. Thus, for example, a challenge to the sufficiency of the indictment or a question of statutory interpretation will not usually necessitate the production of a transcript. Every criminal defendant who has been convicted of a felony is, however, entitled to an opportunity to persuade the New Hampshire Supreme Court, via a written statement, to accept his appeal.
 
 
 50
 Even if a criminal defendant asserts an appellate claim which requires recourse to a transcript, he is not necessarily entitled to the full transcript. A defendant's right to a transcript can be satisfied by providing him with a written substitute that reports the portions of the trial which underlie his appellate contentions. Draper v. Washington, 372 U.S. at 495, 83 S.Ct. at 778; see also Britt v. North Carolina, 404 U.S. at 229, 92 S.Ct. at 434; Mayer v. City of Chicago, 404 U.S. at 194-95, 92 S.Ct. at 414-15; Lugo v. Munoz, 682 F.2d 7, 10 (1st Cir.1982). In some cases, other types of substitutes might suffice. For instance, where a defendant appeals a denial of a motion to suppress evidence, a joint statement of facts may satisfy his right of access to the record. The threshold requirement is that a criminal appellant be provided with "a record of sufficient completeness to permit proper consideration of his claims." Mayer v. City of Chicago, 404 U.S. at 194, 92 S.Ct. at 414 (quoting Draper v. Washington, 372 U.S. at 499, 83 S.Ct. at 780). If a criminal appellant claims he must have access to the full transcript, he does not bear the burden of demonstrating the inadequacy of alternatives proposed by the State or suggested by a court in hindsight. Britt v. North Carolina, 404 U.S. at 230, 92 S.Ct. at 435. Instead, when the grounds of his appeal indicate "a colorable claim for a complete transcript, the burden is on the State to show that only a portion of the transcript or an alternative will suffice for an effective appeal on those grounds." Mayer v. City of Chicago, 404 U.S. at 195, 92 S.Ct. at 415.
 
 VII.
 
 51
 The judgment of the district court is vacated and the cause is remanded to that court with directions to issue the writs of habeas corpus unless within ninety days of the date of this judgment the New Hampshire Supreme Court agrees to accept from each appellant a brief written argument as to why his appeal should be accepted. There is no need to order the State to furnish the appellants with trial transcripts in this instance because they were ordered by the district court for the habeas proceedings and have been available to the appellants.
 
 
 52
 So Ordered.
 
 
 53
 Costs awarded to appellants.
 
 APPENDIX
 
 54
 Summary of the right to appeal by criminal defendants in the United States, the District of Columbia and the Commonwealth of Puerto Rico.
 
 ALABAMA
 
 55
 The right to appeal is granted by ALA.CODE Sec. 12-22-130 (1986). There is an appeal of right from the District Court to the Circuit Court for a trial de novo. ALA.CODE Sec. 12-11-30 (1986). The Court of Appeals has exclusive jurisdiction to hear criminal appeals from the Circuit Court. ALA.CODE Sec. 12-3-9 (1986). Further review in the Supreme Court is discretionary. ALA.CODE Secs. 12-2-2, 12-3-14 (1986).
 
 ALASKA
 
 56
 There is an appeal of right from the District Court to the Superior Court. ALASKA STAT. Sec. 22.10.020(e) (Supp.1986). If, however, the case is not appealable to the Superior Court, then there is an appeal of right to the Court of Appeals. ALASKA STAT. Sec. 22.07.020 (1982). If an appeal does not lie to the Court of Appeals, then the defendant has a right to appeal to the Supreme Court. ALASKA STAT. Sec. 22.05.010(b) (1982). There is discretionary review by the Supreme Court from the Court of Appeals. ALASKA STAT. Sec. 22.05.010(d) (1982).
 
 ARIZONA
 
 57
 The state's constitution provides the right to appeal to all criminal defendants. ARIZ. CONST. art. 2, Sec. 24. The Court of Appeals has jurisdiction over all criminal appeals except when the penalty is death, in which case the Supreme Court has jurisdiction. ARIZ.REV.STAT.ANN. Sec. 13-4031 (Supp.1986). Review by the Supreme Court of cases heard in the Court of Appeals is discretionary. ARIZ.R.CRIM.P. 31.19 (noted in ARIZ.REV.STAT.ANN. vol. 17 (Supp.1986)).
 
 ARKANSAS
 
 58
 Criminal defendants have a right to appeal to the Court of Appeals. ARK.STAT.ANN. Sec. 43-2701 (1977); ARK.R.CRIM.P. 36.1; ARK.S.CT.R. 29.1.b. (noted in vol. 3A of ARK.STAT.ANN. (Supp.1985)). Further review to the Supreme Court is discretionary. ARK.S.CT.R. 29.6 (noted in vol. 3A of ARK.STAT.ANN. (Supp.1985)). Cases involving sentences of death, life imprisonment and thirty or more years of imprisonment are appealed directly to the Supreme Court. ARK.S.CT.R. 29.1.b.
 
 CALIFORNIA
 
 59
 There is an appeal of right from all lower courts to the Appellate Department of the Superior Court. CAL. PENAL CODE Sec. 1466 (West Supp.1987). If the original trial is in the Superior Court, then an appeal of right lies to the Court of Appeals. CAL. CONST. art. 6, Sec. 11; CAL. PENAL CODE Sec. 1237 (Supp.1987). Cases in which the sentence was death go directly to the Supreme Court. CAL. CONST. art. 6, Sec. 12(d); CAL. PENAL CODE Sec. 1235 (West Supp.1987). Further review by the Supreme Court is discretionary. CAL. CONST. art. 6, Sec. 12(b).COLORADO
 
 
 60
 An appeal of right is granted by COLO.REV.STAT. Sec. 16-12-101 (1986), to the Court of Appeals, COLO.REV.STAT. Sec. 13-4-102 (Supp.1986). The Supreme Court reviews Court of Appeals decisions at its discretion. COLO.APP.R. 50 (noted in COLO.REV.STAT. vol. 7A (Supp.1984)).
 
 CONNECTICUT
 
 61
 An appeal of right lies to the Supreme Court, CONN.GEN.STAT.ANN. Sec. 54-95 (West 1985), from the Superior Court, the sole trial court, CONN.GEN.STAT.ANN. Sec. 51-164s (West 1985).
 
 DELAWARE
 
 62
 An appeal of right lies to the Superior Court in all criminal cases involving sentences of more than one month in jail or fines greater than $100. DEL. CONST. art. IV, Sec. 28; DEL.CODE ANN., tit. 11 Secs. 5301, 5701 (1974). A criminal defendant convicted in the Superior Court has a right to appellate review in the Supreme Court. DEL. CONST. art. IV, Sec. 11(1)(b).
 
 FLORIDA
 
 63
 Defendants have an appeal of right. FLA.STAT.ANN. Secs. 924.05, 924.06 (West 1985). The Supreme Court takes all death penalty cases, otherwise its review is discretionary. FLA. CONST. art. 5, Sec. 4(2). The District Court of Appeals and the Circuit Court split the remaining cases. FLA. CONST. art. 5, Secs. 5(3), 6(3).
 
 GEORGIA
 
 64
 Defendants have an appeal of right to the Court of Appeals. GA. CONST. Sec. 2-3103; GA.CODE ANN. Sec. 6-901 (Harrison Supp.1986). The Supreme Court, however, hears death penalty cases directly. GA. CONST. Sec. 2-3203. All other appeals to the Supreme Court are discretionary. GA. CONST. Sec. 2-3205.
 
 HAWAII
 
 65
 Defendants have the right to appeal to the Supreme Court, HAWAII REV.STAT. Secs. 641-11, -12 (Supp.1984), which can then transfer cases to the Intermediate Court of Appeals, HAWAII REV.STAT. Sec. 602-5(8) (Supp.1984). The Supreme Court may hear at its discretion any case from the Intermediate Court of Appeals. HAWAII REV.STAT. Sec. 602-5(9) (Supp.1984).
 
 IDAHO
 
 66
 Defendants have the right of appeal to the Supreme Court. IDAHO CODE Sec. 19-2801 (1979); IDAHO APP.R. 11(c) (Supp.1986). Under IDAHO CODE Sec. 1-2406 (Supp.1983), the Supreme Court may transfer any appeal except death penalty cases to the Court of Appeals. The Supreme Court has discretionary review from the Court of Appeals. IDAHO CODE Sec. 1-2409 (Supp.1983).
 
 ILLINOIS
 
 67
 The state constitution grants the right to appeal. The Appellate Court hears all appeals. ILL. CONST. art. 6, Sec. 6. Further review to the Supreme Court is discretionary. ILL. CONST. art. 6, Sec. 4(c). Death penalty cases are appealed directly to the Supreme Court. ILL. CONST. art. 6, Sec. 4(b).
 
 INDIANA
 
 68
 The state constitution guarantees the right to one appeal. IND. CONST. art. 7, Sec. 6. The Supreme Court must take all cases involving sentences of death, life in prison and imprisonment of more than ten years. IND. CONST. art. 7, Sec. 4. The Supreme Court has assigned all other appeals to the Court of Appeals. IND.APP.PROC.R. 4(B) (Burns Supp.1986).
 
 IOWA
 
 69
 A defendant has the right to appeal in all cases except simple misdemeanors (crimes punishable by less than 30 days and less than $100, IOWA CODE ANN. Sec. 903.1(1)(A) (West Supp.1986)), and ordinance violations. IOWA CODE ANN. Sec. 814.6(1) (West 1979). All appeals are taken to the Supreme Court which can then transfer them to the Court of Appeals. IOWA CODE ANN. Secs. 602.4102(2), 602.5103 (West Supp.1986). The Supreme Court hears appeals from the Court of Appeals at its discretion. IOWA CODE ANN. Sec. 602.4102(4) (West Supp.1986).
 
 KANSAS
 
 70
 KAN.STAT.ANN. Sec. 22-3602 (Supp.1986) gives all defendants a right to appeal. The Supreme Court hears appeals from class A and B felonies, KAN.STAT.ANN. Sec. 22-3601(b) (1982), while the Court of Appeals hears all other appeals, KAN.STAT.ANN. Sec. 22-3601(a) (1982). Supreme Court review from the Court of Appeals is discretionary. KAN.S.CT.R.APP.PRAC. 8.03 (noted in vol. 2A, KAN.STAT.ANN. (Supp.1986)).
 
 KENTUCKY
 
 71
 The Kentucky Constitution gives all defendants the right to an appeal. KY. CONST. Sec. 115 (Supp.1986). The Supreme Court hears all cases involving sentences of death, life in prison and twenty years or more in jail. KY. CONST. Sec. 110(2)(b) (Supp.1986). The Court of Appeals hears all other appeals, unless an appeal has already been provided by another court, in which case review is discretionary. KY.REV.STAT.ANN. Sec. 22A.020 (Bobbs-Merrill 1985). The Supreme Court has discretion to review cases heard by the Court of Appeals. KY. CONST. Sec. 110(2)(b); KY.R.CIV.P. 76.20; KY.R.CRIM.P. 12.02.
 
 LOUISIANA
 
 72
 LA.CODE CRIM.PROC.ANN. art. 911 (West 1984) provides defendants with the right to appeal. Death penalty cases go to the Supreme Court. LA.CODE CRIM.PROC.ANN. art. 912.1(A) (West Supp.1987). Any case in which the defendant had the right to a jury is heard by the Court of Appeals. LA.CODE CRIM.PROC.ANN. art. 912.1(B) (West Supp.1987). Cases in which the defendant had no right to a jury are by writ of review with a full record. LA.CODE CRIM.PROC.ANN. art. 912.1(C) (West Supp.1987).
 
 MAINE
 
 73
 ME.REV.STAT.ANN. tit. 15, Sec. 2115 (1964) grants the right to appeal to the Supreme Judicial Court. There is also an appeal as of right to the Superior Court in certain misdemeanor cases. ME.REV.STAT.ANN. tit. 15, Sec. 2114 (Supp.1986).
 
 MARYLAND
 
 74
 All defendants have an appeal of right to the proper court. MD.CTS. & JUD.PROC.CODE ANN. Sec. 12-301 (1984). The Court of Appeals (Maryland's highest court) must hear all death penalty cases. MD.CTS. & JUD.PROC.CODE ANN. Sec. 12-307(4) (1984). The Court of Special Appeals hears all other appeals. MD.CTS. & JUD.PROC.CODE ANN. Sec. 12-308 (1984). There is also an appeal of right to the Circuit Court from inferior courts. MD.CTS. & JUD.PROC.CODE ANN. Secs. 12-301, 12-401, 12-403 (1984).
 
 MASSACHUSETTS
 
 75
 There is an appeal of right for all defendants to either the Supreme Judicial Court, MASS.GEN.LAWS ANN. ch. 278, Sec. 28 (West 1981), or to the Appeals Court, MASS.GEN.LAWS ANN. ch. 211A, Sec. 10 (West Supp.1986). There is also a right to appeal from the District Court to the Superior Court for a new trial with a jury. MASS.GEN.LAWS ANN. ch. 278, Sec. 18 (West 1981). There is discretionary review from the Appeals Court to the Supreme Court. MASS.GEN.LAWS ANN. ch. 211A, Sec. 11 (West Supp.1986).
 
 MICHIGAN
 
 76
 MICH.COMP.LAWS ANN. Sec. 770.3 (West 1986) provides the right to appeal: subsection (a) provides for appeals of right from the Circuit Court to the Court of Appeals in felony and misdemeanor cases; subsection (b) grants appeals of right from the District Court to the Circuit Court; subsection (c) provides for appeals from the Detroit Trial Court to the Detroit Court of Record; and subsection (d) provides for appeals via a new trial from a municipal court to a circuit court. Review by the Supreme Court is discretionary. MICH.COMP.LAWS ANN. Sec. 600.215 (West 1986); MICH.CT.R.APP.P. 7.302(F).
 
 MINNESOTA
 
 77
 The right to appeal is provided for in the Rules of Criminal Procedure. The Court of Appeals hears all appeals except first degree murder cases. MINN.CRIM.PROC.R. 28.02 (subd.2) (West 1987). First degree murder cases go directly to the Supreme Court. MINN.CRIM.PROC.R. 29.02 (subd.1) (West 1987). Appeals from the Court of Appeals to the Supreme Court are discretionary. MINN.CRIM.PROC.R. 29.02 (subd.2) (West 1987).
 
 MISSISSIPPI
 
 78
 There is a right to appeal to the Supreme Court from the Circuit Court, MISS.CODE ANN. Sec. 99-35-101 (1972), with an appeal via a new trial from the trial court to the Circuit Court for those cases not originating in the Circuit Court, MISS.CODE ANN. Sec. 99-35-1 (1972).
 
 MISSOURI
 
 79
 The right to appeal is in MO.ANN.STAT. Sec. 547.070 (Vernon 1953). The Supreme Court hears all death penalty cases directly, while all other appeals go first to the Court of Appeals. MO. CONST. art. 5, Sec. 3.
 
 MONTANA
 
 80
 The right to appeal is granted to all defendants by MONT.CODE ANN. Sec. 46-20-104 (1985). The Montana Supreme Court hears such appeals.
 
 NEBRASKA
 
 81
 The state constitution gives all felony defendants the right to appeal to the Supreme Court. NEB. CONST. art. I, Sec. 23. Misdemeanor cases are granted discretionary appellate review. NEB.REV.STAT. Secs. 29-2301, 2305 (Supp.1984).
 
 NEVADA
 
 82
 Criminal defendants with cases originating in the Justice's Court may appeal to the District Court. NEV.REV.STAT. Sec. 177.015(1)(a) (1986). All defendants have a right to appeal from the District Court to the Supreme Court. NEV.REV.STAT. Sec. 177.015(1)(b) (1986).
 
 NEW HAMPSHIRE
 
 83
 See Opinion.
 
 NEW JERSEY
 
 84
 A defendant has the right to appeal to the Appellate Division of the Superior Court, N.J.R.APP.PRAC. 2:2-3(a)(1) (West 1987), or to the Superior Court from courts of limited criminal jurisdiction, N.J.R.CRIM.PRAC. 3:23-1 (West 1987). The Supreme Court, however, must hear all death penalty cases. N.J. CONST. art. 6, Sec. 5; N.J.R.APP.PRAC. 2:2-1(a) (West 1987). Other review by the Supreme Court is discretionary. N.J.R.APP.PRAC. 2:2-1(b) (West 1987).
 
 NEW MEXICO
 
 85
 The state constitution grants the right to at least one appeal. N.M. CONST. art. 6, Sec. 2; see also N.M.STAT.ANN. Sec. 39-3-3(A) (1978). The Supreme Court takes all cases involving the death penalty or life in prison directly. N.M. CONST. art. 6, Sec. 2. The Court of Appeals handles all other appeals. N.M.STAT.ANN. Sec. 34-5-8(A)(3) (Supp.1986). There is also an appeal of right from all lower courts to the District Court for a new trial. N.M.STAT.ANN. Sec. 39-3-1 (1978). Other review by the Supreme Court is discretionary. N.M.STAT.ANN. Sec. 34-5-14 (1978).
 
 NEW YORK
 
 86
 There is a right of appeal to the Supreme Court Appellate Division in all cases, N.Y.CRIM.PROC.LAW Sec. 450.10(1) (McKinney Supp.1987), except those involving the death penalty which go directly to the Court of Appeals (New York's highest court), N.Y.CRIM.PROC.LAW Sec. 450.70 (McKinney 1983). There is a discretionary appeal from the Appellate Division to the Court of Appeals. N.Y.CRIM.PROC.LAW Sec. 450.90 (McKinney 1983).
 
 NORTH CAROLINA
 
 87
 There is an appeal of right to the Court of Appeals in all cases, N.C.GEN.STAT. Sec. 7A-27(b) (1986), except death penalty cases which go directly to the Supreme Court, N.C.GEN.STAT. Sec. 7A-27(a) (1986). From the Court of Appeals, review is discretionary unless there was a dissent in the Court of Appeals, in which case review is automatic. N.C.GEN.STAT. Sec. 7A-30 (1986).
 
 NORTH DAKOTA
 
 88
 N.D.CENT.CODE Secs. 29-28-02, 29-28-03, 29-28-06 (1974) gives all defendants a right to appeal to the Supreme Court.
 
 OHIO
 
 89
 All criminal defendants have the right to appeal to the Court of Appeals. OHIO CONST. art. IV, Sec. 3; OHIO REV.CODE ANN. Sec. 2953.05 (Page 1982). The Supreme Court must take directly all death penalty cases; it has discretion to review cases heard by the Court of Appeals. OHIO CONST. art. IV, Secs. (2)(B)2(a)(ii), (e).
 
 OKLAHOMA
 
 90
 There is an appeal of right to the Court of Criminal Appeals for all defendants. OKLA.STAT.ANN. tit. 22, Sec. 1051(a) (West 1986). The constitution does not allow further review to the Supreme Court. OKLA. CONST. art. VII, Sec. 4; see also Hurst v. Pittman, 90 Okla.Cr. 329, 213 P.2d 877, 882 (1950).
 
 OREGON
 
 91
 There is an automatic appeal to the Court of Appeals in all criminal cases. OR.REV.STAT. Sec. 138.040 (1985). Further review by the Supreme Court is discretionary. OR.REV.STAT. Secs. 2.520, 19.210, 138.255 (1985).
 
 PENNSYLVANIA
 
 92
 There is an appeal of right in all criminal cases. PA.CONST.STAT.ANN. tit. 42, Sec. 5105(a) (Purdon 1981); see also PA. CONST. art. 5, Sec. 9. The Supreme Court hears all death penalty cases directly, PA.CONST.STAT.ANN. tit. 42, Sec. 722(4) (Purdon 1981), and hears appeals of all cases that originated in the Commonwealth Court, PA.CONST.STAT.ANN. tit. 42, Sec. 723(a) (Purdon Supp.1986). All other review by the Supreme Court is discretionary. PA.CONST.STAT.ANN. tit. 42, Sec. 724(a) (Purdon 1981). The Court of Common Pleas cases go to the Superior Court for review. PA.CONST.STAT.ANN. tit. 42 Sec. 742 (Purdon 1981). Appeals which do not go to the Superior Court are heard by the Commonwealth Court. PA.CONST.STAT.ANN. tit. 42, Secs. 762(a)(2), (4), (b) (Purdon 1981 & Supp.1986).
 
 RHODE ISLAND
 
 93
 Criminal defendants have a right to appeal from the Superior Court to the Supreme Court. R.I.GEN.LAWS Secs. 9-24-1, 9-24-11, 9-24-32 (1985); R.I.Sup.Ct.R. 4(b) (1976). Criminal defendants whose cases originate in the District Court have a right to appeal to the Superior Court for a trial de novo. R.I.GEN.LAWS 12-22-1 (1981).
 
 SOUTH CAROLINA
 
 94
 The Supreme Court hears all death penalty cases directly, S.C.CODE ANN. Sec. 18-9-20 (Law.Co-op.1976), while all other defendants have the right to appeal cases to the Court of Appeals, S.C.CODE ANN. Secs. 14-8-200, 14-8-206 (Law.Co-op.Supp.1985). Further reivew to the Supreme Court is discretionary. S.C.CODE ANN. Sec. 14-8-210 (Law.Co-op.Supp.1985).
 
 SOUTH DAKOTA
 
 95
 All defendants have an appeal of right to the Supreme Court. S.D.CODIFIED LAWS ANN. Sec. 23A-32-2 (1979).
 
 TENNESSEE
 
 96
 A defendant has the right to an appeal. TENN.R.CRIM.P. 37(a), (b); TENN.R.APP.P. 3(b). The Court of Criminal Appeals hears all appeals except those concerning the constitutionality of a statute which go directly to the Supreme Court. TENN.CODE ANN. Sec. 16-5-108 (1980). Other review by the Supreme Court is discretionary. TENN.R.APP.P. 11.
 
 TEXAS
 
 97
 All defendants have the right to at least one appeal. TEX.CODE CRIM.PROC.ANN. art. 44.02 (Vernon 1979) (repealed in part by TEX.REV.CIV.STAT. art. 1811f, Secs. 1, 4 (Vernon Supp.1987), but not the defendant's substantive right to at least one appeal). The Court of Criminal Appeals hears all death penalty cases directly, TEX. CONST. art. 5, Sec. 5, and hears all other appeals at its discretion, TEX.CODE CRIM.PROC.ANN. art. 4.04 (Vernon Supp.1987). The Court of Appeals hears all other appeals. TEX.CODE CRIM.PROC.ANN. art. 4.03 (Vernon Supp.1987).
 
 UTAH
 
 98
 The state constitution gives all defendants a right to appeal. UTAH CONST. art. I, Sec. 12; see also UTAH CODE ANN. Sec. 77-1-6 (1982). The Supreme Court takes directly appeals which do not lie to either the District Court or Court of Appeals. UTAH CONST. art. VIII, Sec. 5, UTAH CODE ANN. Sec. 78-2a-3 (Supp.1986). Other review by the Supreme Court is discretionary. UTAH CODE ANN. Sec. 78-2-2 (Supp.1986).
 
 VERMONT
 
 99
 VT.STAT.ANN. tit. 13, Sec. 7401 (1974) and VT.R.CRIM.P. 32(a)(2) grant all defendants the right to an appeal to the Supreme Court.
 
 VIRGINIA
 
 100
 Felony defendants convicted in the Circuit Court may petition for an appeal to the Court of Appeals. VA.CODE ANN. Sec. 17-116.05:1.A (Supp.1986). After the record has been filed with the Court of Appeals, a criminal defendant presents to that court a written petition for review which details the merits of his appeal. VA.S.CT.R. 5A:12, 5A:20, 5A:6-5A:10. The defendant is also granted an oral opportunity to persuade a panel of the Court of Appeals to accept his appeal. VA.S.CT.R. 5A:12(d). A felony criminal defendant whose petition for review is denied by the Court of Appeals may present a similar petition on the same record to the Virginia Supreme Court; he is also granted an oral opportunity to persuade the Supreme Court to decide the merits of his case. VA.CODE ANN. Sec. 17-116.07 (Supp.1986); VA.S.CT.R. 5:17. Appeals in death penalty cases do not lie to the Court of Appeals, but are presented directly to the Supreme Court. VA.CODE ANN. Secs. 17-116.05:1.B, 17-110.1 (Supp.1986).
 
 WASHINGTON
 
 101
 The state constitution grants all defendants the right to appeal. WASH. CONST. art. 1, Sec. 22. The Supreme Court hears all death penalty cases directly, WASH.REV.CODE ANN. Sec. 10.95.100 (Supp.1987); the Court of Appeals hears all other appeals, WASH.REV.CODE ANN. Sec. 2.06.030 (Supp.1987). Further review to the Supreme Court is discretionary. WASH.REV.CODE ANN. Sec. 2.06.030 (Supp.1987).
 
 WEST VIRGINIA
 
 102
 Under W.VA.CODE Sec. 58-5-1(j) (1966), a defendant may appeal in all criminal cases. The Supreme Court may reject an appeal for any reason. W.VA.R.APP.P. 7. It may do so, however, only after reviewing a petition for appeal which details the appellant's legal arguments, consulting some or all of the record if so requested by petitioner, and offering the petitioner an opportunity for oral argument on why the case should be heard. W.VA.R.APP.P. 3, 4, 5. If the Supreme Court rejects an appeal for any reason other than that the judgment or order is "plainly right," the petitioner may, within a specified period of time, reapply for a determination of the appeal. W.VA.R.APP.P. 7(b).
 
 WISCONSIN
 
 103
 WIS.STAT.ANN. Secs. 809.30 (felonies), 809.40 (misdemeanors) (West Supp.1986) grants all defendants the right to an appeal. Appeals are to the Court of Appeals, WIS.STAT.ANN. Sec. 808.03 (West Supp.1986), with discretionary review in the Supreme Court, WIS.STAT.ANN. Sec. 809.62 (West Supp.1986).
 
 WYOMING
 
 104
 The right to appeal is granted to all criminal defendants in Wyoming. WYO.STAT. Secs. 7-12-101, 7-12-201 (1977); WYO.R.APP.P. 1.03, 1.04; cf. WYO.R.CRIM.P. 33(a)(2) (defendants must be notified of their right to appeal upon sentencing).
 
 PUERTO RICO
 
 105
 All defendants have the right to appeal from the Superior Court to the Supreme Court, P.R.R.CRIM.P. 193, and from the District Court to the Superior Court, P.R.R.CRIM.P. 216(a).
 
 DISTRICT OF COLUMBIA
 
 106
 D.C.CODE ANN. Sec. 11-721(b) (1981) makes all convictions appealable to the D.C. Court of Appeals except when a fine of less than $50 is levied on an offense that has a maximum punishment of one year in jail and a $1,000 fine, D.C.CODE ANN. Sec. 11-721(c) (1981).
 
 
 
 *
 Of the District of Maine, sitting by designation
 
 
 [1]
 The author of the article is a former Associate Justice of the New Hampshire Supreme Court and was on the court when Rule 7(1) was adopted
 
 
 [2]
 See Appendix for a compilation of criminal appellate review procedures in all of the states, the District of Columbia and the Commonwealth of Puerto Rico
 
 
 [3]
 The Rule 25 method of summary disposition of appeals differs from the declination of acceptance procedure in that the decision is on the merits of the case unless the supreme court lacks jurisdiction. N.H.Sup.Ct.R. 25. In Smith v. Goodnow, No. C83-120-L (D.N.H. Sept. 26, 1983), the District Court of New Hampshire held that it violated due process to apply the Rule 25 procedure to a criminal appeal in which a claim of insufficiency of the evidence was asserted. The court held that due process did not permit the supreme court to decide on the merits that the evidence was sufficient, when it had not actually reviewed the record. The court, however, intimated that the Constitution would not be offended if the state supreme court declined to hear the case without reaching the merits
 
 
 [4]
 The State attempts to disparage the importance of the interest at stake here by noting the availability of other post-conviction remedies, such as habeas corpus, to correct alleged trial errors. Such remedies have no bearing on the determination of whether New Hampshire has offered appellants "an adequate opportunity to present [their] claims fairly within the context of the State's appellate process." Evitts v. Lucey, 469 U.S. at 402, 105 S.Ct. at 839. Moreover, we reject the intimation that a petition for habeas corpus can serve as a substitute for meaningful state appellate review of a defendant's conviction. We are, however, aware that the federal district court in New Hampshire has, to some degree, been transformed into a state appellate court as a result of the state supreme court's utilization of the declination of acceptance procedure. A federal district court entertaining a habeas petition brought by a state prisoner under Sec. 2254 normally orders the production of a transcript of petitioner's trial, if one is not already available. Thus, New Hampshire state prisoners are apt to receive a fuller opportunity to present their claims for review via a habeas petition than through the state appeal process. As a state-advanced remedy for the inadequacy of its own procedures, this not only places a burden on the federal government, but is contrary to the principle that a defendant must first exhaust his state rights. We have never heard it suggested before that habeas corpus was an excuse for not protecting them
 
 
 [5]
 For example, when Colpitt was asked why he was in downtown Farmington, New Hampshire (the scene of the crime), he responded:
 A: Everything was crazy that afternoon and that, but I had enough sense in my head that I fairly well knew what I was doing and that, and even though a lot of outer forces and that were really bothering me and that, I never could understand that town.
 Q: What do you mean by that?
 A: Very, very conflictive town. Conflicting. In every way. No matter who you are you get conflictions.
 
 
 [6]
 The criminal defendants in Draper, like those here, were denied a full review on the merits of their appellate claims by the state supreme court. The Draper petitioners had sought review by certiorari in the Supreme Court of Washington of the trial court's refusal to furnish them with a transcript of their trial so that they could pursue their appellate claims. Pursuant to Washington law, the trial court refused to provide them with a transcript because it had found their appellate contentions to be frivolous. 372 U.S. at 492-93, 83 S.Ct. at 777-78. Petitioners sought review by certiorari of the trial court's denial of their transcript applications. The Washington Supreme Court quashed the writ, affirming the trial court's finding of frivolity and thus effectively denying petitioners an opportunity for a full review on the merits of their appellate claims. Washington v. Long, 58 Wash.2d 830, 365 P.2d 31 (1961). The United States Supreme Court ruled that "the Washington Supreme Court could not deny petitioners' request for review of the denial of the transcript motion without a 'record of sufficient completeness' to permit proper consideration of their claims." Draper, 372 U.S. at 499, 83 S.Ct. at 780. The court's decision in Draper derived from its earlier holding in Griffin v. Illinois, which, as we have already noted, was rooted in both the due process and equal protection clauses. Evitts v. Lucey, 469 U.S. at 401-02, 105 S.Ct. at 839