STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT, v. GARY
BIANCO, DEFENDANT-APPELLANT.

Argued March 4, 1986—Decided July 7, 1986.

────────

384

*John Burke, III,* Assistant Deputy Public Defender, argued the cause, for appellant (*Thomas S. Smith, Jr.,* Acting Public Defender, attorney).

Defendant submitted a supplemental letter brief, *pro se.*

*Carol M. Henderson,* Deputy Attorney General, argued the cause, for respondent (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney).

*Deborah H. Karpatkin,* Staff Counsel, submitted a letter in lieu of brief on behalf of *amicus curiae,* American Civil Liberties Union of New Jersey (*Jeffrey E. Fogel,* Executive Director, attorney).

The opinion of the Court was delivered by

GARIBALDI, J.

The sole issue presented in this appeal is whether the four-month Pilot Program of the Appellate Division's Excessive Sentence Oral Argument Program (ESOA Program) was constitutional. Specifically, defendant-appellant contends that his mandatory participation in the Pilot Program violated his federal and state constitutional rights to due process and to equal protection of the law. Petitioner concedes that as presently constituted the ESOA Program is constitutional.

I

Gary Bianco, the defendant, and his mother, Nancy Bianco, each were charged with two counts of conspiracy to commit robbery (*N.J.S.A.* 2C:5–2) and two counts of first-degree robbery (*N.J.S.A.* 2C:15–1). The charges stemmed from their abduction of a fifty nine-year-old woman from a supermarket parking lot in Hudson County. The defendant drove the victim several blocks away and then released her after robbing her of $330. On June 20, 1983, following plea negotiations, Gary Bianco entered a retraxit plea of guilty to first-degree robbery in exchange for the State's agreement to recommend dismissal of the remaining counts of the indictment and to recommend that any sentence imposed be concurrent with another sentence that the defendant was to serve in Essex County.[1] On July 27, 1983, the trial court sentenced the defendant to New Jersey State Prison for a twenty-year term with a ten-year period of parole ineligibility. This sentence was concurrent, but not coterminous, with his sentence imposed in Essex County. He also was ordered to pay a penalty of $25 to the Violent Crimes Compensation Board. The court dismissed the remaining counts of the indictment.

---

[1] On July 25, 1983, defendant was sentenced on multiple Essex County indictments to an aggregate sentence of thirty-years imprisonment with a fifteen-year period of parole ineligibility.

The defendant appealed on September 19, 1983, challenging the length of his sentence. On April 6, 1984, a two-judge panel of the Appellate Division heard this appeal as part of the ESOA Pilot Program. The appeal was argued orally. There were no written briefs submitted and the argument was not sound recorded or transcribed. The court affirmed defendant's conviction and sentence.

We granted defendant's petition for certification, 99 *N.J.* 191 (1985), and summarily remanded the case to the Appellate Division for "consideration of defendant's argument that he was denied equal protection and due process of law by reason that his appeal was heard as part of the excessive sentence oral argument program."

After oral argument, but without benefit of briefs, the Appellate Division issued a *per curiam* opinion, 205 *N.J.Super.* 462 (1985), affirming Bianco's conviction and holding that the ESOA Program did not violate defendant's state and federal constitutional rights to due process and to equal protection. The defendant filed a Petition for Certification as well as a *pro se* Notice of Appeal as of Right pursuant to Rule 2:2–1(a). The latter was limited in scope to the allegedly disparate [2] and excessive sentence he received. We again granted certification, 102 *N.J.* 342 (1985), limited solely to the constitutionality of the excessive sentence program, and we now affirm the judgment of the Appellate Division.

---

[2] The defendant did not raise the disparity of sentence issue in his original appearance before the Appellate Division, therefore there was no reason to remove his appeal from the ESOA Pilot Program. The defendant raised the disparity issue for the first time in his petition for certification to this Court. Defendant asserts that had his attorney had to file a brief in that first appeal to the Appellate Division, the attorney would have considered his case more carefully, detected the disparity of sentence argument, and presented it in an appeal. We suggest that this reflects lack of preparation on the part of defendant's attorney, not a failure of the Pilot Program to provide adequate appellate review.

## II

The ESOA Program was the result of the Appellate Division's growing concern about the mounting backlog and delays—sometimes up to four years—in the processing and perfecting of criminal appeals. The very real fear was that some defendants might fully serve an illegal or excessive sentence before the sentence was subject to appellate review. To study the problem, this Court created an experimental five-judge criminal part of the Appellate Division to hear all criminal appeals for the 1983–84 court year and established a Criminal Appeals Expediting Committee. An examination of pending criminal appeals disclosed that there was an inventory of at least 568 cases, in which the sole issue was excessiveness of sentence, and that some of these cases were three or four years old. Moreover, it appeared that the backlog was due mainly to the inability of the Public Defender to file briefs because of personnel and budget limitations. Discussion among members of the Committee and other judges, as well as visits to two other states that had adopted expedited criminal appeals procedures,[3] resulted in a proposal that excessive sentence appeals be identified and placed on an oral argument calendar, without the benefit of briefs, for summary disposition.

Although only two other states have dispensed with briefs, a number of commentators have embraced the idea of briefless appeals. *See* P. Carrington, D. Meador & M. Rosenberg, *Justice on Appeal* 27 (1976).[4]

---

[3]Both Rhode Island and Washington have expedited criminal appeals through a procedure whereby counsel are required to show cause why the matter should not be summarily affirmed or reversed.

[4] The idea of dispensing with briefs derives from the realization that close study of the written arguments and of cases and statutes is not called for in all cases. The special advantages of written argumentation are not always useful. Many appeals turn upon matters that can be resolved by oral presentation of the issues and references to the record or papers on appeal. This is especially so where the issues are simple or routine, involving only well settled issues of law and their application to relatively uncomplicated

Similarly, the American Bar Association (ABA) has suggested a number of procedural devices for reducing the delay resulting from the dramatic rise in criminal appeals, including the elimination of briefs. American Bar Association, *Criminal Appeals* § 21–3.1 (1978). The ABA believes that it is desirable to handle appeals through procedures that vary depending on the complexity of the case so long as the appellate panel is informed of the facts, understands the arguments of the party, and collegially reaches a reasoned conclusion. *Id.* § 21–3.4.

On March 22, 1984, the Court entered an Order relaxing Rules 2:6–11(a) and 2:11–1 to permit oral argument without brief in excess sentence appeals. Further orders of the Court extended the program.

The ESOA Program was designed to minimize the need for support time from both the Public Defender and the Attorney General.[5] The vast majority of appeals that raise only questions of excessive sentencing are brought by indigents.[6] Prior to the initiation of the Program, a large number of the excessive sentence appeals were at least two-years old and still

---

factual situations. In such cases it may be that written briefs simply complicate the judge's task by encouraging the parties to conceive and develop arguments that may not be central to disposition of the appeal. An experiment conducted with a group of state appellate judges confirms that it is entirely possible to decide a case without briefs, at least where the issues are relatively few and simple. This has always been done in English appeals.

P. Carrington, D. Meador & M. Rosenberg, *Justice on Appeal*, 27 (1976).

[5]Both the Office of the Public Defender and the Office of the Attorney General agreed to try the concept. It was agreed by all that any additional issues that were non-frivolous and that were raised at the time of oral argument would act to remove the appeal from the Program. This procedure has been followed, and in those cases the court has established a scheduling order for full briefing of the appeal. Moreover, the Appellate Division has directed that any case involving the merger of offenses is not to be included in the Program.

[6]Ten of 185 excess sentence appeals were filed by private counsel between September 1 and November 1, 1984.

awaiting briefing by the Public Defender's Office. The Clerk's Office of the Appellate Division estimates that in August 1986, at the end of its first two years of operation, the Program will have eliminated more than 800 excessive sentencing appeals that were still pending at the end of August 1984. The Clerk's Office further estimates that thereafter up to one-third of all criminal appeals may be disposed of on oral argument within six months of the filing of the notice of appeal; currently it takes on average more than fourteen and one-half months. The hope is that the Public Defender and the Attorney General then will be able to devote more of their time and limited resources to complex appellate issues.

During the Pilot Program, March through June of 1984, four excessive sentence calendars were held and a total of 307 of the 390 calendared cases, including the defendant's, were disposed of through the excessive sentence procedure. Cases were selected for the excessive sentence calendar from a printout of all appeals in which the only transcripts ordered were of a plea, sentencing, or both. The printout listed all criminal appeals that satisfied these criteria in ascending order by docket number.

Priority was given to the oldest cases in selecting appeals from the printout for calendaring. However, an effort was also made for a given calendar to select between five and seven appeals assigned to individual Deputy Public Defenders so that appeals could be heard efficiently with minimum disruption to the staff. The determination of which Public Defender was involved was based upon who had signed the notice of appeal. This caused some appeals to receive additional priority that they would not have had based upon their age alone. Private cases were not grouped but were listed individually on any available calendar and private counsel were required to appear to argue a single case at that time. It was the intention of the

court that all excessive sentence appeals be disposed of in a similar manner.[7]

### III

■ The defendant's first constitutional argument is that the Pilot Program violated his right to due process. We disagree. The Due Process Clause of the Fourteenth Amendment does not require a state to provide appellate review. *Jones v. Barnes,* 463 *U.S.* 745, 751, 103 *S.Ct.* 3308, 3312, 77 *L.Ed.*2d 987, 993 (1983); *Abney v. United States,* 431 *U.S.* 651, 656, 97 *S.Ct.* 2034, 2038, 52 *L.Ed.*2d 651 (1977); *Griffin v. Illinois,* 351 *U.S.* 12, 18, 76 *S.Ct.* 585, 590, 100 *L.Ed.* 891 (1956), reh'g den., 351 *U.S.* 958, 76 *S.Ct.* 844, 100 *L.Ed.* 1480 (1956).

Unlike the federal constitution, the New Jersey Constitution does provide for the appellate review of criminal proceedings. N.J. Const. 1947 art. VI, § 5, para. 2. And as the Supreme Court recently has stated, a state that confers a right to appeal, though not required to confer such a right, must establish appellate procedures that satisfy the Due Process Clause. *Evitts v. Luce,* 469 *U.S.* 387, ——, 105 *S.Ct.* 830, 838–39, 83 *L.Ed.* 2d 821, 833 (1985).

In order to satisfy the Due Process Clause, defendants must be given a "meaningful opportunity to be heard." *Boddie v. Connecticut,* 401 *U.S.* 371, 377, 91 *S.Ct.* 780, 785, 28 *L.Ed.*2d 113, 118 (1971). For example, the State must provide an indigent criminal defendant with the means necessary to prosecute his first appeal as of right, such as a free transcript and effective assistance of counsel. Otherwise poverty would deny

---

[7]At the beginning of the Program, the court found that, in some instances, excessive sentence appeals had been assigned by the Public Defender to designated counsel for briefing on a contract basis. In those cases the Appellate Division accepted the briefs that were filed since they had been paid for by the Public Defender. The court's judicial review was based upon the records and briefs and oral argument was rarely heard. The Public Defender was instructed by the Appellate Division to terminate the use of designated counsel in excessive sentences cases, and the court refused after August 20, 1984, to accept any briefs in those cases.

the indigent appellate review. *Jones v. Barnes,* 463 *U.S.* at 751, 103 *S.Ct.* at 3312, 77 *L.Ed.*2d at 993; *Anders v. California,* 386 *U.S.* 738, 87 *S.Ct.* 1396, 18 *L.Ed.*2d 493 (1967), reh'g den., 388 *U.S.* 924, 87 *S.Ct.* 2094, 18 *L.Ed.*2d 1377 (1967); *Griffin v. Illinois,* 351 *U.S.* at 17–18, 76 *S.Ct.* at 589–90, 100 *L.Ed.* at 898.

Defendant claims that the abbreviated appeals process of the Pilot Program denied him and other indigent defendants a meaningful opportunity to be heard. The review was inadequate, he argues, because no written briefs were allowed, no transcription or recording was made of the proceedings, and no formal opinion was issued. Therefore, defendant claims that the Pilot Program left him without a visible assurance that his argument had been heard and without a complete statement of the reasons for the Appellate Division's decision, thereby precluding any review by this Court or any subsequent court.

First, we reject the defendant's assertion that a written brief was essential for him effectively to challenge his sentence. The scope of review was confined narrowly to excessiveness in the sentence. Since the law in this area is settled, see *State v. Hodge,* 95 *N.J.* 369 (1984); *State v. Roth,* 95 *N.J.* 334 (1984), full briefing would not have aided the Appellate Division in reviewing the trial record below. Under the Pilot Program, the court was supplied in each case with a copy of the indictment, a copy of the plea transcript, the sentencing transcript, the presentence report, and the judgment of conviction that contains the sentence as well as the reasons given by the sentencing judge.

As the Appellate Division observed:

[All of these] documents are reviewed by the judges hearing the appeal before oral argument. At argument, counsel is not restricted as to his time, except as it is restricted under the rules of court. He has the opportunity to present the specifics with respect to his client in an effort to demonstrate that the sentence imposed is manifestly excessive or harsh, otherwise illegal or not in accord with the plea bargain. The judges have an opportunity to question counsel about anything in the documents before them which might conflict with or support the argument being advanced by counsel. The experience of the judges who have participated in the program is positive. It has shown that the judges, after

reading the documents submitted and hearing the argument of counsel, fully understand the nature of the complaint that is being brought to them and are fully prepared to deal intelligently with it.

■ Similarly, a transcription or a recording of the Appellate Division proceedings, while convenient, would not have aided this Court in discharging its obligation to read fully the trial court record before accepting the defendant's Petition for Certification, or now in deciding this appeal. Nor was a transcript necessary to explain to the defendant what occurred before the Appellate Division on his claim.[8] His counsel bears the brunt of that responsibility.

■ Finally, the defendant's constitutional rights were not violated by the Appellate Division's issuance of an order rather than a formal opinion in his case. Lack of a formal opinion does not indicate that the Appellate Division gave less than adequate consideration to the matter. *See Furman v. United States*, 720 *F.*2d 263, 265 (2d Cir.1983).

There is no requirement of law or in the court rules that an appellate court must accompany its decision by a written opinion, except in the case of a judge dissenting in the Appellate Division. *See R.* 2:11–3. Prior to the ESOA Program, the opinion issued by the court was, in most cases, a summary affirmance citing Rule 2:11–3. As the Appellate Division noted, the judges in the ESOA Program reviewed all submitted documents and thereafter heard oral argument with respect to each appellant. Subsequently, the judges conferred and entered orders. Where a reduction or modification of a sentence was recommended, it was usually accompanied with a brief statement of the reason and remanded to the sentencing court for further proceedings consistent with the direction. On a few occasions, the court modified a sentence or vacated a sentence

---

[8]Since the beginning of the 1984 term, excessive sentence criminal appeal calendars have been sound recorded pursuant to the suggestion of the Public Defender. The record that is transcribed contains the argument of counsel and the court's questioning.

on its own. When it did so, it invariably stated the reasons for the action taken. *See Furman v. United States,* 720 *F.*2d 263 (2d Cir.1983); *United States v. Baynes,* 548 *F.*2d 481 (3d Cir.1977); *United States v. Marines,* 535 *F.*2d 552 (10th Cir. 1976).

We conclude that the Pilot Program did not violate the defendant's federal or state constitutional rights to due process, which we deem to be equivalent in this instance. Defendant had a meaningful opportunity to present his case. He was represented by counsel who was given the opportunity at oral argument to raise any issue of excessive sentencing that he desired. The oral argument was not abbreviated or restricted, except as provided under court rules, and the Appellate Division carefully reviewed the sentencing issue.

## IV

Bianco also alleges that the Pilot Program violated his right to equal protection of the law under the United States Constitution and the New Jersey Constitution insofar as it created a subclass of indigent defendants, all of whom were denied full-scale appellate review. We disagree.

The Equal Protection Clause of the Fourteenth Amendment commands that no state shall "deny to any person within its jurisdiction the equal protection of the laws." It is essentially a direction to the states that they should treat all persons who are similarly situated alike. *F.S. Royster Guano Co. v. Virginia,* 253 *U.S.* 412, 415, 40 *S.Ct.* 560, 561, 64 *L.Ed.* 989 (1920). The general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. *Cleburne v. Cleburne Living Center,* 473 *U.S.* ——, ——, 105

*S.Ct.* 3249, 3254, 87 *L.Ed.*2d 313, 320 (1985).[9] As the Supreme Court has stated, the constitution does not demand that a statute necessarily apply equally to all persons. *Rinaldi v. Yeager*, 384 *U.S.* 305, 86 *S.Ct.* 1497, 16 *L.Ed.*2d 577 (1966). "The Constitution does not require things which are different in fact ... to be treated in law as though they were the same." *Id.* at 309, 86 *S.Ct.* at 1499, 16 *L.Ed.*2d at 580 (quoting *Tigner v. Texas*, 310 *U.S.* 141, 147, 60 *S.Ct.* 879, 882, 84 *L.Ed.* 1124, 1128 (1940)). Hence legislation may impose special burdens upon defined classes in order to achieve permissible ends. *Rinaldi*, 384 *U.S.* at 309, 86 *S.Ct.* at 1499, 16 *L.Ed.*2d at 580. But the Equal Protection Clause does require that in defining a class subject to legislation, the distinctions that are drawn have "some relevance to the purpose for which the classification is made." *Id.*

Defendant does not assert that the Pilot Program intentionally or invidiously discriminated against him and other indigent defendants by creating a subclass within the class of criminal defendants raising excessive sentence pleas. He does, however, claim that that was the inadvertent result of the Pilot Program. He claims that his right to equal protection was violated because the selection of cases in the Pilot Program was not made according to articulated standards, and not all criminal appeals raising excessiveness of sentence as the sole issue were included to the Program. Specifically, defendant contends that the Pilot Program "applied exclusively to guilty

[9]Such deferential scrutiny rather than strict scrutiny is appropriate here. Indigency is not a suspect classification nor do defendants have a fundamental right to full-scale appellate review. Therefore, strict scrutiny is not warranted. *See Cleburne*, 473 *U.S.* at ——, 105 *S.Ct.* at 3254–55, 87 *L.Ed.*2d at 320–21 (citing *Schweiker v. Wilson*, 450 *U.S.* 221, 230, 101 *S.Ct.* 1074, 1080, 67 *L.Ed.*2d 186 (1981); *United States Railroad Retirement Board v. Fritz*, 449 *U.S.* 166, 174–75, 101 *S.Ct.* 453, 459, 66 *L.Ed.*2d 368 (1980); *Vance v. Bradley*, 440 *U.S.* 93, 97, 99 *S.Ct.* 939, 942, 59 *L.Ed.*2d 171 (1979); *New Orleans v. Dukes*, 427 *U.S.* 297, 303, 96 *S.Ct.* 2513, 2516, 49 *L.Ed.*2d 511 (1976). Nor is intermediate scrutiny called for. *See Cleburne*, 473 *U.S.* at ——, 105 *S.Ct.* at 3255, 87 *L.Ed.* at 321.

plea/sentencing cases handled by the Office of the Public Defender and did not apply to defendants with retained counsel, or to indigent defendants whose cases were not calendared."[10] The State disputes this factual predicate vigorously. "This is simply not the case," it writes, pointing out at the same time that "[t]he truth of the matter is that the backlog of cases in the Appellate Division which involve the sole issue of excessiveness of sentence are primarily and almost exclusively Public Defender cases."

Participants in the Pilot Program were chosen on the basis of two criteria, specifically content (only appeals that raised solely the issue of a plea, or a sentence, or both) and age (the appeals that had been filed farthest back were chosen first). Moreover, as the Public Defender recognizes, the vast majority of all criminal appeals that raise solely the issue of excessive sentencing are raised by indigents.[11] Since those indigents are represented almost exclusively by public defenders, it is not surprising that 99% of the appeals in the Pilot Program were from public defenders. Indeed one of the reasons behind the adoption of the Excessive Sentencing Program was to alleviate the backlog of hundreds of unfiled briefs by the Public Defender solely on excessive sentencing. While we see no intent to create a subclass, we recognize that the practical effect may

---

[10]Under the ESOA Program, as it presently is constituted, all appeals in which the defendant is represented by counsel, regardless of whether such counsel is a private attorney or a public defender, that involve the sole issue of excessiveness of sentence, are included. However, in all cases selected for the ESOA Program, the defendant must be represented by counsel. Thus, a *pro se* defendant, whether or not an indigent, is ineligible for the Program but is afforded the opportunity to file a brief. The Appellate Division believes that allowing *pro se* defendants to appear at oral argument would place them at a severe disadvantage and present serious administrative problems if the defendant is incarcerated.

[11]This is most likely explained by the fact that indigents simply are not deterred by the cost of filing an appeal, even if the sole basis for that appeal is limited to sentencing.

have been to create one.[12] Nonetheless, we hold that the classification was rationally related to a legitimate state interest. The very purpose of the Excessive Sentence Program was to help defendants, the majority of whom are indigent, by alleviating the inordinate delays in appellate review.

We believe that the equal protection and due process concerns raised by the defendant are implicated to a greater extent by delays in the appellate process. Recognizing those concerns, the Supreme Court of Connecticut recently granted a writ of habeas corpus to petitioners who alleged that their continued incarceration was illegal because appeal of their state court conviction had been unreasonably and unjustifiably delayed by an overworked and overburdened public defender's office. *Gaines v. Manson,* 194 *Conn.* 510, 481 *A.*2d 1084 (1984). Each petitioner experienced delays of two to four and one-half years in the hearing of his appeal because of the "failure of the state to provide a sufficient number of appellate public defenders and state's attorneys to insure that the appeals of indigent criminal defendants [were] handled in a timely fashion." *Id.* at 521–522, 481 *A.*2d at 1092. The Court found that the delays themselves were sufficient to deny the petitioners their state and federal constitutional rights to due process and equal protection. *Id.* at 525, 481 *A.*2d at 1094. Equal protection was involved because only indigents represented by the Public Defender's Office experienced the delays. While a privately-represented defendant on average had his appeal heard in six months, it took four years for an indigent. As the Court stated:

> That the facts of these cases implicate the petitioners' rights to equal protection is undeniable. The protracted delays which they have suffered, caused as they are by the understaffing and overwork of the public defender's office, can affect only those criminal defendants who are indigent. No matter how clear their claims of trial error, no matter how injurious their mistaken convictions may be, they have no chance to have their appeal briefs prepared and their

---

12During the Pilot Program, the Appellate Division determined that one of the 390 defendants whose appeals were heard under the ESOA program retained private counsel.

appellate arguments presented until they reach the top of an inexorable and slow-moving assignment list. By contrast, criminal defendants who have the financial ability to engage private counsel have the opportunity to have briefs filed on their behalf in a period of six months or less. [*Id.*]

Similarly, the Supreme Judicial Court of Massachusetts has observed that

delay may work an irremediable unjust loss of liberty in case his conviction is finally overthrown; and for any appellant, even one not in custody, delay may entail anxiety, forfeiture of opportunity, and damage to reputation, among other conceivable injuries. It is not a satisfactory answer to such hardships that the presumption of innocence will have been abraded by the fact of the initial conviction from which the appeal is being taken. [Citation omitted.] To be considered, too, is the interest of the legal system and the society at large in the expedition of appeals, especially criminal appeals.

*Petition of Williams,* 378 *Mass.* 623, 626, 393 *N.E.*2d 353, 355 (1979).

In short, justice is denied if it is delayed.

The Excessive Sentence Program was intended to forestall the type of delays present in Connecticut and Massachusetts and to help defendants, in particular indigents. Instead of risking the chance that a defendant might fully serve an illegal or excessive sentence before his case received appellate review, the Pilot Program allowed an excessive sentence appeal to be argued quickly. Hence, the inclusion of virtually only indigents in the pilot phase of the ESOA program rationally furthered this Court's attempt to help those same indigents by alleviating excessive delays in the criminal appellate process.

We conclude therefore that the Pilot Program, by singling out excessive sentence appeals for disposition with oral argument but without briefs, offered each defendant an opportunity to be heard, and rationally furthered the State's interest of securing prompt justice for all.

The judgment of the Appellate Division is affirmed.

*For affirmance*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.