791 P.2d 479

STATE of New Mexico,
Plaintiff–Appellee,

v.

Thomas Dion SHELDON,
Defendant–Appellant.

No. 12054.

Court of Appeals of New Mexico.

March 27, 1990.

Certiorari Denied May 8, 1990.

Hal Stratton, Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender, Susan Gibbs, Appellate Defender, Santa Fe, for defendant-appellant.

OPINION

BIVINS, Chief Judge.

Defendant appeals from his conviction for child abuse. Our calendar notice proposed summary affirmance. Defendant filed a timely memorandum in opposition to proposed summary affirmance. Having found the arguments made in defendant's memorandum unpersuasive, we affirm for the reasons set out below.

*Facts*

Defendant's wife took care of the victim, a thirteen-month-old baby, and the victim's two brothers, as well as her two children. Testimony established that, at approximately 1:00 p.m. on the day in question, defendant arrived home from his job. The children were all present at defendant's house, in their beds, and in the process of beginning to take their naps. Between 3:27 p.m. and 3:32 p.m., defendant's wife left the house and went to the store. Defendant testified that some time after his wife left, he heard what he described as troubled breathing as he walked past the room where the victim was napping. He testified that he went into the room and tried to awaken the victim; when he could not, he attempted mouth-to-mouth resuscitation and then called 911. The 911 call was made at 3:57 p.m. The first ambulance arrived at 4:03 p.m., and defendant's wife returned at 4:05 p.m. The victim was transported to the hospital, but she died from brain injury three days later.

Medical testimony established that the injury occurred between 2:57 p.m. and 3:57 p.m. Medical testimony further established that the injury was caused by skull fractures on both sides of the victim's head, and that she had been injured while the side of her head was against a hard surface. Defendant presented evidence that the injuries could have been caused by a child flipping or jumping into the playpen where the victim was kept. While recognizing the possibility of the victim's injuries

occurring in such a manner, the medical experts rejected this as an explanation and testified that, to a degree of medical probability, the victim's injuries were the result of child abuse. Defendant also presented evidence of his good character.

*Discussion*

The sole issue raised on appeal is whether there is sufficient evidence to support defendant's conviction. Defendant argues that the docketing statement does not clearly establish no doubt of the sufficiency of the evidence; therefore, under *Garcia Lopez v. State,* 107 N.M. 450, 760 P.2d 142 (1988), *State v. Leal,* 103 N.M. 299, 706 P.2d 510 (1985), and *State v. Anaya,* 98 N.M. 211, 647 P.2d 413 (1982), his case cannot be decided on the summary calendar. We disagree. Defendant's case is distinguishable from *Garcia Lopez, Leal,* and *Anaya,* because the evidence recited in the docketing statement in this case clearly establishes there is sufficient evidence to support defendant's conviction, as illustrated below.

■ Defendant also contends the summary calendar system denies him the protections of the fourteenth amendment because it denies indigent defendants the right to review the transcript below to support their arguments when their case is on the summary calendar, while allowing any appellant who can afford to purchase the transcript this right. The docketing statement has been recognized as an adequate alternative to a complete transcript. *See State v. Talley,* 103 N.M. 33, 702 P.2d 353 (Ct.App.1985). In light of our determination that the facts set out in defendant's docketing statement and memorandum in opposition provide sufficient facts for review of his issue, reassignment to a non-summary calendar would serve no purpose other than to allow appellate counsel to pick through the record. It has long been recognized by this court that the appellate rules do not allow appellate counsel to pick through the record for possible error. *See State v. Ramming,* 106 N.M. 42, 738 P.2d 914 (Ct.App.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987); *State*

*v. Jacobs,* 91 N.M. 445, 575 P.2d 954 (Ct. App.1978), *overruled on other grounds, State v. Moore,* 109 N.M. 119, 782 P.2d 91 (Ct.App.1989); *State v. Toussaint,* 84 N.M. 677, 506 P.2d 1224 (Ct.App.1973). Under the circumstances of this case, defendant has no constitutional right to a complete transcript.

■ Defendant relies on *State v. Leal,* 104 N.M. 506, 723 P.2d 977 (Ct.App.1986) (*Leal 2* ) to support his contention that there is insufficient evidence to support his conviction. Defendant argues that his case is factually similar to *Leal 2,* except that the situation in the present case is even more compelling than in *Leal 2* because the state in the present case was required to prove that defendant knowingly or intentionally endangered the victim's life or health, whereas the state in *Leal 2* was only required to prove that the defendant permitted the abuse to take place.

We recognize that this case is factually similar to *Leal 2* in several ways. Both cases involved situations where, upon arrival of paramedics, the defendants were each found with a thirteen-month-old baby; both babies were diagnosed as having suffered from trauma to the head, which injuries doctors testified were not likely to have resulted from a fall, and which caused the death of the babies. Also, in both cases, the defendants presented an alternate explanation of the crime, and experts testified that certain aspects of the explanation were implausible. Nevertheless, there are several key differences between the two cases.

In *Leal 2,* no evidence was presented regarding the time the fatal injury occurred. Medical testimony in *Leal 2* established that the bruises on the child's face had occurred within twelve to eighteen hours of the time the child was admitted to the hospital and that the injury to the back of her head almost certainly happened later, but there was no evidence regarding how much later or how long before the hospital admission. In the present case, the evidence established that the injury occurred between 2:30 and 4:00 p.m., when the paramedics arrived, a much shorter

time span than in *Leal 2.* More importantly, in *Leal 2* there was no evidence that the defendant was present when the child was injured, that she knew of a pattern of abuse, or that she had reason to suspect that the child would be abused and failed to act to prevent. In the present case, the testimony established that defendant was in the house with the victim during the time when the injury must have occurred. Accordingly, we find the present case to be distinguishable from *Leal 2.*

In the present case, Dr. Orrison and Dr. McFeeley testified that, to a reasonable degree of medical probability, the victim's injuries were a result of child abuse. Dr. Orrison testified that by child abuse he meant that more force was exerted on the child than one would expect from a simple fall. Both Dr. Orrison and Dr. McFeeley testified that they had never heard of a case involving injuries such as the victim suffered resulting from children flipping into a playpen. Dr. Katz testified that the person who inflicted the injuries on the victim would have to be someone old enough to be sufficiently coordinated to injure the victim. Dr. Katz further testified that it was "preposterous" to consider that children running and jumping into the victim's playpen could have caused the victim's injuries.

Although defendant's wife was also present during part of the time period when the injury was determined to have occurred, testimony showed that she was gone for approximately half of this period. The jury could reasonably infer from this evidence that the injury was inflicted during the time when defendant's wife was not present. Although other children were present with defendant during the time period when defendant's wife was absent, the jury could reasonably infer, based on the above medical testimony, that the children did not inflict the injuries.

█ Insofar as defendant contends there was insufficient evidence to show intent, we disagree. It has been recognized that, since the element of intent involves the state of mind of the defendant, it is seldom, if ever, susceptible to direct proof, and may be proved by circumstantial evidence. *See State v. Manus,* 93 N.M. 95, 597 P.2d 280 (1979), *overruled on other grounds, Sells v. State,* 98 N.M. 786, 653 P.2d 162 (1982). The jury could reasonably infer, based on the above evidence, that defendant intentionally injured the victim. Accordingly, the above evidence was sufficient to support defendant's conviction for child abuse. *See* NMSA 1978, § 30–6–1(C)(1) (Cum.Supp. 1989). Therefore, we affirm defendant's conviction.

IT IS SO ORDERED.

ALARID and APODACA, JJ., concur.