864 P.2d 302

STATE of New Mexico,
Plaintiff–Appellee,

v.

Rito IBARRA, Defendant–Appellant.

No. 14312.

Court of Appeals of New Mexico.

March 18, 1993.

Certiorari Granted July 6, 1993.

Tom Udall, Atty. Gen., Santa Fe, for plaintiff-appellee.

Sammy J. Quintana, Chief Public Defender, Christopher Bulman, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

BLACK, Judge.

Defendant appeals his convictions for armed robbery, conspiracy to commit armed robbery, aggravated battery, false imprisonment, and unlawful taking of a motor vehicle. The calendar notice proposed summary affirmance and Defendant responded with a timely filed memorandum in opposition and a motion to amend the docketing statement. We have reviewed Defendant's memorandum in opposition and are unpersuaded that error occurred.

Accordingly, for the reasons stated below, we affirm.

Defendant seeks to add to his docketing statement the issue of whether the Court's summary calendar system denies his rights to equal protection and due process of law. However, Defendant concedes that the concerns he raises in this issue were already answered contrary to his assertions in *State v. Sheldon*, 110 N.M. 28, 791 P.2d 479 (Ct.App.), *cert. denied*, 110 N.M. 44, 791 P.2d 798, *cert. denied*, 498 U.S. 969, 111 S.Ct. 435, 112 L.Ed.2d 418 (1990). It appears that *Sheldon* raised its issues in a slightly different factual context. Notwithstanding this, we are not convinced that Defendant's arguments are viable. Moreover, unlike the Court in *Sheldon, we are unwilling to accept the facts asserted as the foundation for Defendant's arguments.*

## I. *EQUAL PROTECTION*

The factual basis for the equal protection argument Defendant now seeks to advance is that our appellate rules create a system which allows a non-indigent to purchase a transcript while an indigent is denied access to a transcript. First, Defendant points to no support for this assertion. Second, judicial notice of the records of this Court since the time the summary calendar system was adopted in 1975 illustrates this assertion to be inaccurate. *See State v. Turner*, 81 N.M. 571, 576, 469 P.2d 720, 725 (Ct.App.1970) (this Court takes judicial notice of its own records). While non-indigents generally have the financial means with which to purchase transcripts, this Court has not always allowed the necessary extensions of time in which to obtain the transcripts. Thus, non-indigents, like indigents, are frequently required to make a showing of inability to recall before they are effectively allowed access to transcripts during the summary calendar process.

In addition, judicial notice of the records of this Court will also show that indigents are allowed access to the transcripts during the summary calendar process in many situations. This happens in judicial districts

which routinely duplicate the audio tapes or produce computer-assisted transcripts in sufficient time to allow their use at this stage. When necessary, this Court has requested the tape monitor or court reporter to specifically make such records available during the calendaring process. Such express allowance by this Court usually turns on an allegation of a good-faith inability to recall some matter related to the issues raised on appeal. As a general rule, the only time the Court does not allow access to the transcript is when significant extra time is requested and the sole allegation is that it is necessary to sort through the transcript for unidentified error.

Thus, Defendant has failed to sustain his allegation of unequal treatment.

## II. *DUE PROCESS*

■ Defendant argues that under the summary calendar system, the right to appeal in New Mexico is only as good as counsel's memory. Again, judicial notice of the records of this Court shows that, when counsel alleges a legitimate inability to recall and to reconstruct the events through available non-transcript alternatives, this Court will frequently allow time and access to a recording or transcript, provided that the allegations relate to issues raised or raisable without sifting through the transcript to search for unidentified error. *See Sheldon*, 110 N.M. at 29, 791 P.2d at 480.

■ It is generally accepted that the Due Process Clause of the Fourteenth Amendment does not require a state to afford criminal defendants a right to appeal. *Jones v. Barnes*, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312, 77 L.Ed.2d 987 (1983); *Griffin v. Illinois*, 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). However, when a state does provide a right to appeal, as New Mexico does in the New Mexico Constitution, Article VI, Section 2, the state must provide a fair opportunity for criminal defendants to present their contentions within the context of those state procedures. *See Ross v. Moffitt*, 417 U.S. 600, 610–11, 616, 94 S.Ct. 2437, 2443–44, 2446, 41 L.Ed.2d 341 (1974). Assignment of a

case to the summary calendar, which strictly limits the length of and time for submissions to the appellate court, does not violate due process as long as the defendant is able to properly present issues raised on appeal. *See United States v. Marines*, 535 F.2d 552 (10th Cir.1976) (per curiam); *State v. Bianco*, 103 N.J. 383, 511 A.2d 600 (1986). Analysis of similar appellate practices has indicated transcripts are not essential to the disposition of routine cases on appeal. Eino M. Jacobson & Mary M. Schroeder, *Arizona's Experiment with Appellate Reform*, 63 A.B.A.J. 1226, 1230 (1977); Stephen L. Wasby et al., *Volume and Delay in State Appellate Courts: Problems and Responses* 86 (1979). Appellate judges have often concluded that the preparation of substantial testimonial transcripts in every case is wasteful and not necessary. *See* Albert V. Bryan, *For a Swifter Criminal Appeal—To Protect the Public as well as the Accused*, 25 Wash. & Lee L.Rev. 175, 184–85 (1968); William H. Erickson, *The Trial Transcript—An Unnecessary Roadblock to Expeditious Appellate Review*, 11 U.Mich.J.L.Rev. 344 (1978); Shirley M. Hufstedler, *New Blocks for Old Pyramids: Reshaping the Judicial System*, 44 S.Cal.L.Rev. 901, 911 (1971); Eino M. Jacobson, *The Arizona Appellate Project: An Experiment in Simplified Appeals*, 23 UCLA L.Rev. 480, 489 (1976); Richard H. Mills, *Caseload Explosion: The Appellate Response*, 16 J.Marshall L.Rev. 1, 22 (1982); John J. Parker, *Improving Appellate Methods*, 25 N.Y.U.L.Rev. 1, 6–7 (1950); Charles D. Pierce, *Appellate Reform in Colorado*, 20 Judges' J. 33 (Winter 1981).

It seems generally accepted that a state may find means other than a complete verbatim transcript to afford adequate and effective appellate review, within the requirements of due process, even to indigent defendants. *State v. McFarland*, 287 N.W.2d 162 (Iowa), *cert. denied*, 449 U.S. 853, 101 S.Ct. 147, 66 L.Ed.2d 66 (1980); *Smith v. State*, 291 Md. 125, 433 A.2d 1143 (1981); *cf. Harris v. Estelle*, 583 F.2d 775 (5th Cir.1978) (per curiam) (statement of facts in narrative form sufficient in habeas

proceeding where all defendants received similar non-verbatim record and defendant had the opportunity to correct and supplement the record).

■ The United States Supreme Court has recognized that "[a] statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on the court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript." *Draper v. Washington*, 372 U.S. 487, 495, 83 S.Ct. 774, 779, 9 L.Ed.2d 899 (1963). The Supreme Court has held that criminal defendants must be afforded a " 'record of sufficient completeness' to permit proper consideration of their claims." *Id.* at 499, 83 S.Ct. at 780 (quoting *Coppedge v. United States*, 369 U.S. 438, 446, 82 S.Ct. 917, 921, 8 L.Ed.2d 21 (1962)). In addressing the issue of what constitutes a sufficient record on appeal, the Supreme Court pointed out that a "record of sufficient completeness" does not translate automatically into a complete verbatim transcript. *Mayer v. City of Chicago*, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (1971); *Britt v. North Carolina*, 404 U.S. 226, 92 S.Ct. 431, 30 L.Ed.2d 400 (1971); *Griffin v. Illinois*, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956). *But see Hardy v. United States*, 375 U.S. 277, 288, 84 S.Ct. 424, 431, 11 L.Ed.2d 331 (1964) (Goldberg, J., concurring). We believe this standard leaves an appellate court free to determine the nature and extent of the trial record necessary to fully review the issues raised in each case and require a transcript in only those cases where it would advance appellate resolution of the issues raised.

■ Our system provides each side the opportunity to advance its version of the facts and requires the counsel who tried the case to prepare the initial docketing statement. SCRA 1986, 12–208(A) (Repl. 1992); *see also* Erickson, *supra*, 11 U.Mich. J.L.Ref. at 350; Carrington et al., *supra*, at 66. The facts contained in the docketing statement are accepted as the facts of the case unless they are challenged. *State v. Calanche*, 91 N.M. 390, 574 P.2d 1018 (Ct.

App.1978). The docketing statement is reviewed together with the record proper to determine the appropriate initial calendar assignment. *See* Thomas B. Marvell, 75 Judicature 86, 88–89 (1991). All appeals in this Court are subject to the calendaring process, and any case filed in the Court of Appeals has the potential of being assigned to the summary calendar. *See* SCRA 1986, 12–210 (Repl.1992).

■ In determining whether a case should be assigned to the summary calendar, a key consideration is whether the Court can obtain sufficient information about the facts of a case from the record proper, the docketing statement, and the parties' memoranda. *See* Marvell, *supra*, 75 Judicature at 89. If the calendar judge believes the facts contained in the docketing statement are sufficient to enable the Court to review the issues raised, the case is assigned to the summary calendar, with a proposed disposition set out. *Id.* The parties then have ten days from the service of the calendar notice to file a memorandum in response to the Court's proposed disposition. SCRA 12–210(D)(3). A party opposing summary disposition is required to come forward and specifically point out errors in fact and/or law. *State v. Sisneros*, 98 N.M. 201, 647 P.2d 403 (1982). Cases challenging the sufficiency of the evidence to support a conviction can be disposed of on the summary calendar where the docketing statement and memoranda in response to the calendar notice provide sufficient undisputed facts for review of the issues. *See Sheldon*, 110 N.M. at 29, 791 P.2d at 480. If the parties disagree regarding material facts in the case, the case is not disposed of on the summary calendar. *See* Marvell, *supra*, 75 Judicature at 89; *see also Garcia Lopez v. State*, 107 N.M. 450, 760 P.2d 142 (1988).

A procedure which provides for a docketing statement and a final disposition of appeals within an average of one hundred days would appear to be more favorable to criminal defendants than waiting for years for a transcript so they can begin their appeal. *Compare* Marvell, *supra*, 75 Judicature at 87 (average summary calendar

case decided within one hundred days of notice of appeal) *with Proffitt v. State*, 181 Ga.App. 564, 353 S.E.2d 61 (1987) (five-year delay in preparation of transcript not a violation of due process). Nor does Defendant advance any evidence that use of the summary calendar affects the chances of reversible error escaping this Court's detection, and what empirical data exist support the opposite conclusion. Thomas B. Marvell, *The New Mexico Court of Appeals Summary Calendar: An Evaluation*, 22 N.M.L.Rev. 502, 533 (1992). Thus, there is neither a factual nor legal basis for Defendant's allegation of a due process violation.

### III. *EFFECTIVE ASSISTANCE OF COUNSEL*

■ Defendant has not cited one case standing for the proposition that a denial of the constitutional right to effective assistance of counsel occurs when state court procedures deny both indigent and non-indigent defendants an absolute right to pick through a transcript searching for unidentified error. We are entitled to assume, when arguments are unsupported by cited authority, that supporting authorities do not exist. *See In re Doe*, 100 N.M. 764, 676 P.2d 1329 (1984). Defendant has again failed to sustain his allegation of denial of effective assistance of counsel. Therefore, since the issue Defendant seeks to add to his docketing statement is not viable, the motion to amend is denied. *See State v. Moore*, 109 N.M. 119, 129, 782 P.2d 91, 101 (Ct.App.), *cert. denied*, 109 N.M. 54, 781 P.2d 782 (1989).

### IV. *SUFFICIENCY OF THE EVIDENCE*

■ Pursuant to *State v. Boyer*, 103 N.M. 655, 712 P.2d 1 (Ct.App.1985), Defendant continues to argue that there was insufficient evidence to support his convictions.

The evidence revealed in the docketing statement shows that Defendant and his nephew approached the victims' residence and asked for employment. When Mr. Lopez opened the screen door, he was knocked down by the nephew and Defendant jumped over him and headed for Mrs. Lopez. The victims testified that the two intruders demanded money and a gun. Evidence further revealed that the two intruders beat and kicked Mr. Lopez and dragged both him and his wife around the house in search of money. *See* NMSA 1978, § 30–3–5(A) (Repl.Pamp.1984) (aggravated battery is unlawful touching or application of force with intent to injure). After an unsuccessful attempt to obtain money from a safe in the garage, the intruders forced the victims back into the house, threw Mrs. Lopez in a closet, and continued to beat Mr. Lopez. Thereafter, the intruders threw Mr. Lopez in the closet with his wife, but he managed to kick the door open so they tied him to the bed instead. *See* NMSA 1978, § 30–4–3 (Repl.Pamp.1984) (false imprisonment is intentionally confining or restraining a person without his consent and with knowledge that he has no lawful authority to do so). Once the Lopez family was secured, the intruders searched the home and found money and jewelry. *See* NMSA 1978, § 30–16–2 (Repl.Pamp.1984) (robbery is the theft of anything of value from the person of another or from their immediate control by use or threatened use of force or violence). Thereafter, the intruders took the keys to the Lopezes' truck and drove off. *See* NMSA 1978, § 66–3–504(A) (Repl.Pamp.1989) (unlawful taking of motor vehicle is taking of any vehicle intentionally and without consent of the owner). Once they were apprehended by police, the intruders admitted robbing the Lopez family and stealing their truck. Inside the truck, the police discovered a paper bag with the stolen money and jewelry and one of the knives utilized in the crimes. The other knife was located the next day in the Lopezes' garage.

Specifically, Defendant asks this Court to reexamine the calendar notice's proposed holding in light of *State v. Garcia*, 114 N.M. 269, 837 P.2d 862 (1992). However, based on the analysis of this issue in the calendar notice, and Defendant's memorandum in opposition to our proposed disposition, we feel confident in concluding that

there was sufficient evidence for the jury to reach its verdict beyond a reasonable doubt. *See Garcia.* Defendant has not persuaded us that the proposed holding in the calendar notice is incorrect. Based on the above, as well as the calendar notice's analysis, we affirm on this issue.

## V. *DOUBLE JEOPARDY*

█ Also pursuant to *Boyer*, Defendant continues to argue that his dual convictions for false imprisonment and armed robbery violated the constitutional prohibitions against double jeopardy. Specifically, Defendant argues that he was punished twice for unitary conduct and there is no clear statement of legislative intent with respect to these two crimes. We disagree. As noted in the calendar notice, the statutory definitions of armed robbery and false imprisonment make it clear that the legislature intended to protect different individual interests and, therefore, created separately punishable offenses for violations of those interests. *Compare* § 30–16–2 *with* § 30–4–3. The calendar notice also separated the conduct of Defendant which comprised armed robbery and the conduct which comprised false imprisonment and showed how the conduct for each conviction involved completely separate and distinct actions on the part of Defendant. *See State v. Moore.* Accordingly, based on the above, as well as the analysis in the calendar notice, we affirm on this issue.

## VI. *CONCLUSION*

Based on the above, Defendant's convictions are AFFIRMED.

IT IS SO ORDERED.

CHAVEZ and PICKARD, JJ., concur.